No. 15-10854

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

JUDY HUNTER, on behalf of herself, individually, on behalf of all others
similarly situated; as a member of the Acme Brick Company 401(k)
Retirement and Savings Plan Investment/Administrative Committee; and as
a member of the Acme Brick Company Pension Plan Retirement; ANITA
GRAY, individually, and on behalf of all others similarly situated; BOBBY
LYNN ALLEN, individually, and on behalf of all others similarly situated,

*Plaintiffs-Appellants*,

v.

BERKSHIRE HATHAWAY, INCORPORATED; ACME BUILDING
BRANDS, INCORPORATED,

*Defendants-Appellees*

_____

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth
Hon. Terry R. Means, U.S. District Judge, Presiding (D.C. No. 4:14-CV-663)

_____

**APPELLANTS' RECORD EXCERPTS**

_____

KELLER ROHRBACK L.L.P.
Gary A. Gotto
Christopher Graver
3101 N. Central Ave. Ste. 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

KELLER ROHRBACK L.L.P.
T. David Copley
1201 Third Ave., Ste. 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384

*Attorneys for Appellants*

# TABLE OF CONTENTS

**Tab**

Docket Sheet, *Hunter v. Berkshire Hathaway, Inc.*,
No. 4:14-cv-0063-Y (N.D. Tex.) (ROA.1-8) ................................................1

Plaintiffs' Notice of Appeal (ROA.843-44) ...............................................2

Final Judgment (ROA.842) .......................................................................3

Order Granting Motion to Dismiss (ROA.826-41)....................................4

Original Complaint (ROA.9, .12-47) .........................................................5

Agreement and Plan of Merger by and among Berkshire Hathaway,
Inc., J Acquisition Corp. and Justin Industries, Inc.
dated June 19, 2000 § 5.7 (ROA.150, .180-81).........................................6

Respectfully submitted this 10th day of November, 2015.

KELLER ROHRBACK L.L.P.

By:/s/ *T. David Copley*
    T. David Copley
    1201 Third Ave., Ste. 3200
    Seattle, WA 98101
    Telephone:  (206) 623-1900
    Facsimile:  (206) 623-3384

    Gary A. Gotto
    Christopher Graver
    3101 N. Central Ave., Ste. 1400
    Phoenix, AZ 85012
    Telephone:  (602) 248-0088
    Facsimile:  (602) 248-2822

    *Attorneys for Appellants*

Tab 1

APPEAL,CLOSED

# U.S. District Court
## Northern District of Texas (Fort Worth)
## CIVIL DOCKET FOR CASE #: 4:14-cv-00663-Y

Hunter et al v. Berkshire Hathaway, Inc. et al
Assigned to: Judge Terry R Means
Case in other court:  U S Court of Appeals 5th Circuit, 15-10854
Cause: 29:1132 E.R.I.S.A.-Employee Benefits

Date Filed: 08/15/2014
Date Terminated: 08/05/2015
Jury Demand: None
Nature of Suit: 791 Labor: Employee
Retirement Income Security Act (ERISA)
Jurisdiction: Federal Question

**Plaintiff**

**Judy Hunter**

represented by **Gary A Gotto**
Keller Rohrback L.L.P.
3101 North Central Avenue
Suite 1400
Phoenix, AZ 85012
602-248-0088
Fax: 602-230-6360
Email: ggotto@kellerrohrback.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Mark Clarence Hill**
6300 Ridglea Pl.
Suite 620
Fort Worth, TX 76116
8178879013
Fax: 8179459994
Email: Mark@MarkCHill.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Christopher Graver**
Keller Rohrback L.L.P.
3101 North Central Avenue
Suite 1400
Phoenix, AZ 85012
602-248-0088
Fax: 602-230-6360
Email: cgraver@kellerrohrback.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**John Jeremiah Shaw**
Myers Law

2525 Ridgmar Blvd
Suite 150
Fort Worth, TX 76116
817/731-2500
Fax: 817/731-2501
Email: JShaw@myerslawtexas.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Plaintiff**

**Anita Gray**                          represented by   **Gary A Gotto**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Bar Status: Not Admitted*

                                                         **Mark Clarence Hill**
                                                         Myers Hill
                                                         2525 Ridgmar Blvd
                                                         Suite 150
                                                         Fort Worth, TX 76116
                                                         8177312500
                                                         Fax: 8177312501
                                                         Email: mhill@myers-hill.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Bar Status: Admitted/In Good Standing*

                                                         **Christopher Graver**
                                                         (See above for address)
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Bar Status: Not Admitted*

                                                         **John Jeremiah Shaw**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Bar Status: Admitted/In Good Standing*

**Plaintiff**

**Bobby Lynn Allen**                    represented by   **Gary A Gotto**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Bar Status: Not Admitted*

                                                         **Mark Clarence Hill**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

2

*Bar Status: Admitted/In Good Standing*

**Christopher Graver**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**John Jeremiah Shaw**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

V.

**Defendant**

**Berkshire Hathaway, Inc.**                    represented by    **Ralph H Duggins**
Cantey Hanger LLP
Cantey Hanger Plaza
600 W 6th St Suite 300
Fort Worth, TX 76102
817/877-2800
Fax: 817/877-2807
Email: rduggins@canteyhanger.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Anthony F Shelley**
Miller & Chevalier Chartered
655 15th Street NW
Suite 900
Washington, DC 20005
202/626-5924
Fax: 202/626-5801
Email: ashelley@milchev.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Brian A Hill**
Miller & Chevalier Chartered
655 15th Street NW
Suite 900
Washington, DC 20005
202/626-6014
Fax: 202/626-5801
Email: bhill@milchev.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

15-10854.3

**Defendant**

| | | |
|---|---|---|
| **Acme Building Brands, Inc.** | represented by | **Ralph H Duggins**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Admitted/In Good Standing*<br><br>**Anthony F Shelley**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Not Admitted*<br><br>**Brian A Hill**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Not Admitted* |

| Date Filed | # | Docket Text |
|---|---|---|
| 08/15/2014 | 1 (p.9) | COMPLAINT against All Defendants filed by Judy Hunter, Anita Gray, Bobby Lynn Allen. (Filing fee $400; Receipt number 0539-6226796) Clerk to issue summons(es). In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Hill, Mark) (Entered: 08/15/2014) |
| 08/15/2014 | 2 (p.48) | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Bobby Lynn Allen, Anita Gray, Judy Hunter. (Hill, Mark) (Entered: 08/15/2014) |
| 08/15/2014 | 3 (p.50) | New Case Notes: A filing fee has been paid. File to Judge Means. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge. Clerk to provide copy to plaintiff if not received electronically. (mdf) (Entered: 08/18/2014) |
| 08/18/2014 | 4 (p.52) | Summons Issued as to Acme Building Brands, Inc., Berkshire Hathaway, Inc. (mdf) (Entered: 08/18/2014) |
| 09/03/2014 | 5 (p.56) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $25; Receipt number 0539-6269056) filed by Bobby Lynn Allen, Anita Gray, Judy Hunter (Attachments: # 1 (p.9) Certificate of Good Standing, # 2 (p.48) Proposed Order Proposed Order) (Gotto, Gary) (Entered: 09/03/2014) |
| 09/03/2014 | 6 (p.62) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $25; Receipt number 0539-6269064) filed by Bobby Lynn Allen, Anita Gray, Judy Hunter (Attachments: # 1 (p.9) Certificate of Good Standing, # 2 (p.48) |

4

| | | |
|---|---|---|
| | | Proposed Order Proposed Order) (Graver, Christopher) (Entered: 09/03/2014) |
| 09/04/2014 | 7 (p.68) | Unopposed Motion for Extension of Time to File Answer *or Otherwise Respond* filed by Acme Building Brands, Inc., Berkshire Hathaway, Inc. (Duggins, Ralph) (Entered: 09/04/2014) |
| 09/09/2014 | 8 (p.71) | ORDER granting 5 (p.56) , 6 (p.62) Applications for Admission Pro Hac Vice of Christopher Graver and Gary A. Gotto. If not already done, Applicants must register as an ECF User within 14 days (LR 5.1(f)). (Ordered by Judge Terry R Means on 9/9/2014) (mdf) (Entered: 09/09/2014) |
| 09/09/2014 | 9 (p.72) | ORDER granting 7 (p.68) Motion for Extension of Time to File Answer re 1 (p.9) Complaint, Acme Building Brands, Inc. answer due 10/6/2014; Berkshire Hathaway, Inc. answer due 10/6/2014. (Ordered by Judge Terry R Means on 9/9/2014) (mdf) (Entered: 09/09/2014) |
| 09/16/2014 | 10 (p.73) | Unopposed MOTION for Leave to File Motion in Excess of Page Limits filed by Acme Building Brands, Inc., Berkshire Hathaway, Inc. (Duggins, Ralph) (Entered: 09/16/2014) |
| 09/18/2014 | 11 (p.77) | ORDER granting 10 (p.73) Motion for Leave to Exceed Page Limitations: Defendants may file a joint motion to dismiss with a single supporting brief not to exceed 35 pages in length. Similarly, Plaintiffs may file a single response to the motion with a supporting brief not to exceed 35 pages in length. (Ordered by Judge Terry R Means on 9/18/2014) (mdf) (Entered: 09/18/2014) |
| 09/25/2014 | 12 (p.79) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $25; Receipt number 0539-6319041) filed by Acme Building Brands, Inc., Berkshire Hathaway, Inc. (Attachments: # 1 (p.9) Additional Page(s), # 2 (p.48) Exhibit(s) Certificate of Good Standing, # 3 (p.50) Proposed Order) (Shelley, Anthony) (Entered: 09/25/2014) |
| 09/25/2014 | 13 (p.86) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $25; Receipt number 0539-6319104) filed by Acme Building Brands, Inc., Berkshire Hathaway, Inc. (Attachments: # 1 (p.9) Additional Page(s), # 2 (p.48) Exhibit(s) Certificate of Good Standing, # 3 (p.50) Proposed Order) (Hill, Brian) (Entered: 09/25/2014) |
| 09/26/2014 | 14 (p.93) | SUMMONS Returned Executed as to Acme Building Brands, Inc. ; served on 8/25/2014; Berkshire Hathaway, Inc. ; served on 8/18/2014. (Hill, Mark) (Entered: 09/26/2014) |
| 09/30/2014 | 15 (p.97) | ORDER granting 12 (p.79) Application for Admission Pro Hac Vice of Brian A. Hill. If not already done, Applicant must register as an ECF User within 14 days (LR 5.1(f).); granting 13 (p.86) Application for Admission Pro Hac Vice of Brian A. Hill. If not already done, Applicant must register as an ECF User within 14 days (LR 5.1(f)). (Ordered by Judge Terry R Means on 9/30/2014) (mdf) (Entered: 09/30/2014) |
| 10/06/2014 | 16 (p.98) | Motion to Dismiss for Failure to State a Claim filed by Acme Building Brands, Inc., Berkshire Hathaway, Inc. (Attachments: # 1 (p.9) Memorandum in Support, # 2 (p.48) Proposed Order) (Shelley, Anthony) (Entered: 10/06/2014) |
| 10/06/2014 | 17 (p.146) | Appendix in Support filed by Acme Building Brands, Inc., Berkshire Hathaway, Inc. re 16 (p.98) Motion to Dismiss for Failure to State a Claim (Attachments: # 1 (p.9) Additional Page(s) Ex. 1, App'x pages 1-41, # 2 (p.48) Additional Page(s) Ex. |

| | | |
|---|---|---|
| | | 2, Part 1 of 3, App'x Pages 42-94, # 3 (p.50) Additional Page(s) Ex. 2, Part 2 of 3, App'x Pages 95-147, # 4 (p.52) Additional Page(s) Ex. 2, Part 3 of 3, App'x Pages 148-191, # 5 (p.56) Additional Page(s) Ex. 3, Part 1 of 2, App'x Pages 192-272, # 6 (p.62) Additional Page(s) Ex. 3, Part 2 of 2, App'x Pages 273-283, # 7 (p.68) Additional Page(s) Ex. 4, App'x Page 284, # 8 (p.71) Additional Page(s) Ex. 5, App'x Pages 285-286, # 9 (p.72) Additional Page(s) Ex. 6, App'x Pages 287-289, # 10 (p.73) Additional Page(s) Westlaw Cases, App'x Pages 290-353, # 11 (p.77) Certificate of Service) (Shelley, Anthony) (Entered: 10/06/2014) |
| 10/06/2014 | 18 (p.509) | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Acme Building Brands, Inc., Berkshire Hathaway, Inc.. (Shelley, Anthony) (Entered: 10/06/2014) |
| 10/07/2014 | 19 (p.512) | ORDER TO SUBMIT JOINT STATUS REPORT AND PROPOSED DISCOVERY PLAN: The parties are ordered to electronically file with the clerk of the court the signed joint status report and proposed discovery plan (one instrument) within 28 days of the date of the filing of this order. (Ordered by Judge Terry R Means on 10/7/2014) (mdf) (Entered: 10/07/2014) |
| 10/15/2014 | 20 (p.520) | Unopposed MOTION to Extend Time to Respond to Defendants' Motion to Dismiss Plaintiffs' Original Complaint filed by Bobby Lynn Allen, Anita Gray, Judy Hunter (Attachments: # 1 (p.9) Proposed Order) (Graver, Christopher) (Entered: 10/15/2014) |
| 10/20/2014 | 21 (p.524) | ORDER granting 20 (p.520) Unopposed Motion to Enlarge Time: Plaintiffs shall have through and including November 10, 2014, within which to respond to Defendants'Motion to Dismiss Plaintiffs' Original Complaint. (Ordered by Judge Terry R Means on 10/20/2014) (mdf) (Entered: 10/20/2014) |
| 11/03/2014 | 22 (p.525) | Joint STATUS REPORT *AND PROPOSED DISCOVERY PLAN* filed by Acme Building Brands, Inc., Bobby Lynn Allen, Berkshire Hathaway, Inc., Anita Gray, Judy Hunter. (Gotto, Gary) (Entered: 11/03/2014) |
| 11/07/2014 | 23 (p.537) | MOTION for Extension of Time to File Response/Reply to 16 (p.98) Motion to Dismiss for Failure to State a Claim filed by Bobby Lynn Allen, Anita Gray, Judy Hunter (Attachments: # 1 (p.9) Proposed Order) (Graver, Christopher) (Entered: 11/07/2014) |
| 11/14/2014 | 24 (p.543) | ORDER granting 23 (p.537) Motion to Extend Time to File Response/Reply: After reviewing the motion, the Court concludes that it should be and hereby is GRANTED, in that Plaintiffs shall have through and including November 17, 2014, within which to respond to Defendants' Motion to Dismiss Plaintiffs' Original Complaint. Further, Defendants shall have through and including December 11, 2014, within which to file their reply in support of their Motion to Dismiss Plaintiffs' Original Complaint. (Ordered by Judge Terry R Means on 11/14/2014) (mdf) (Entered: 11/14/2014) |
| 11/17/2014 | 25 (p.544) | RESPONSE filed by Bobby Lynn Allen, Anita Gray, Judy Hunter re: 16 (p.98) Motion to Dismiss for Failure to State a Claim (Attachments: # 1 (p.9) Exhibit(s), # 2 (p.48) Exhibit(s), # 3 (p.50) Exhibit(s), # 4 (p.52) Exhibit(s), # 5 (p.56) Exhibit(s), # 6 (p.62) Exhibit(s)) (Hill, Mark) (Entered: 11/17/2014) |
| 11/17/2014 | 26 (p.668) | Appendix in Support filed by Bobby Lynn Allen, Anita Gray, Judy Hunter re 25 (p.544) Response/Objection, (Attachments: # 1 (p.9) Exhibit(s), # 2 (p.48) Exhibit(s), # 3 (p.50) Exhibit(s), # 4 (p.52) Exhibit(s), # 5 (p.56) Exhibit(s), # 6 (p.62) Exhibit(s)) (Hill, Mark) (Entered: 11/17/2014) |

| 11/24/2014 | 27 (p.756) | ORDER POSTPONING DEADLINE FOR JOINT STATUS REPORT AND CLASS-CERTIFICATION MOTION: (See order for specifics). (Ordered by Judge Terry R Means on 11/24/2014) (mdf) (Entered: 11/24/2014) |
| --- | --- | --- |
| 12/02/2014 | 28 (p.757) | Unopposed MOTION for Leave to File Reply in Excess of Page Limitations (), Unopposed MOTION to Expedite *Consideration* filed by Acme Building Brands, Inc., Berkshire Hathaway, Inc. (Duggins, Ralph) (Entered: 12/02/2014) |
| 12/03/2014 | 29 (p.762) | ORDER granting 28 (p.757) Motion for Leave to Exceed Page Limitation. (Ordered by Judge Terry R Means on 12/3/2014) (mpw) (Entered: 12/03/2014) |
| 12/11/2014 | 30 (p.763) | REPLY filed by Acme Building Brands, Inc., Berkshire Hathaway, Inc. re: 16 (p.98) Motion to Dismiss for Failure to State a Claim (Shelley, Anthony) (Entered: 12/11/2014) |
| 02/13/2015 | 31 (p.783) | Joint MOTION for Leave to File Supplemental Briefs and Responses Regarding Supplemental Authority filed by Acme Building Brands, Inc., Bobby Lynn Allen, Berkshire Hathaway, Inc., Anita Gray, Judy Hunter (Attachments: # 1 (p.9) Exhibit(s) M&G Polymers Decision) (Duggins, Ralph) (Entered: 02/13/2015) |
| 02/19/2015 | 32 (p.806) | ORDER PARTIALLY GRANTING JOINT MOTION FOR LEAVE 31 (p.783) ... It is, therefore, ORDERED that no later than February 27, 2015, Defendants may file a supplemental brief of no more than six pages regarding the Supreme Court's recent decision in M&G Polymers USA, LLC v. Tackett, No. 13-1010, 2015 U.S. LEXIS 759 (Jan. 26, 2015), and how that decision affects their pending Motion to Dismiss (doc. 16). No later than March 6, 2015, Plaintiffs may file a response brief of no more than six pages. No later than March 16, 2015, Defendants may file a reply brief of no more than three pages. (Ordered by Judge Terry R Means on 2/19/2015) (wxc) (Entered: 02/19/2015) |
| 02/27/2015 | 33 (p.807) | Supplemental Document by Acme Building Brands, Inc., Berkshire Hathaway, Inc. as to 16 (p.98) Motion to Dismiss for Failure to State a Claim . (Shelley, Anthony) (Entered: 02/27/2015) |
| 03/06/2015 | 34 (p.814) | RESPONSE filed by Bobby Lynn Allen, Anita Gray, Judy Hunter re: 31 (p.783) Joint MOTION for Leave to File Supplemental Briefs and Responses Regarding Supplemental Authority (Hill, Mark) (Entered: 03/06/2015) |
| 03/16/2015 | 35 (p.821) | REPLY filed by Acme Building Brands, Inc., Berkshire Hathaway, Inc. re: 33 (p.807) Supplemental Brief re: 16 (p.98) Motion to Dismiss (Shelley, Anthony) Modified on 3/17/2015 (mdf). (Entered: 03/16/2015) |
| 08/05/2015 | 36 (p.826) | ORDER GRANTING MOTION TO DISMISS: After consideration ofthe motion, the related briefs, and the applicable law, the Courtconcludes that the motion should be and hereby is GRANTED. Plaintiffs' claims are DISMISSED WITH PREJUDICE to their refiling (see order for specifics) re 16 (p.98) Motion to Dismiss. (Ordered by Judge Terry R Means on 8/5/2015) (trs) (Entered: 08/05/2015) |
| 08/05/2015 | 37 (p.842) | FINAL JUDGMENT: In accordance with the order issued this same day and Federal Rule of Civil Procedure 58, all claims are hereby DISMISSED WITH PREJUDICE to their refiling. All costs of Court under 28 U.S.C. § 1920 shall be borne by Plaintiffs. (Ordered by Judge Terry R Means on 8/5/2015) (trs) (Entered: 08/05/2015) |
| 08/31/2015 | 38 (p.843) | |

| | | |
|---|---|---|
| | | NOTICE OF APPEAL as to 37 (p.842) Judgment, 36 (p.826) Order, to the Fifth Circuit by Bobby Lynn Allen, Anita Gray, Judy Hunter. Filing fee $505, receipt number 0539-7029945. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Graver, Christopher) (Entered: 08/31/2015) |
| 09/09/2015 | | USCA Case Number 15-10854 in U S Court of Appeals 5th Circuit for 38 (p.843) Notice of Appeal, filed by Bobby Lynn Allen, Judy Hunter, Anita Gray. (tle) (Entered: 09/09/2015) |

Tab 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JUDY HUNTER, on behalf of herself, individually, and on behalf of all others similarly situated; as a member of the Acme Brick Company 401(k) Retirement and Savings Plan Investment/Administrative Committee; and as a member of the Acme Brick Company Pension Plan Retirement/Administrative Committee; ANITA GRAY, individually, and on behalf of all others similarly situated; and BOBBY LYNN ALLEN, individually, and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br>  vs.<br><br>BERKSHIRE HATHAWAY INC. and ACME BUILDING BRANDS, INC.,<br><br>   Defendants. | **No. 4:14-CV-663-Y** |

**PLAINTIFFS' NOTICE OF APPEAL**

Notice is hereby given that Plaintiffs Judy Hunter, on behalf of herself, individually, and on behalf of all others similarly situated; as a member of the Acme Brick Company 401(k) Retirement and Savings Plan Investment/Administrative Committee; and as a member of the Acme Brick Company Pension Plan Retirement/Administrative Committee; Anita Gray, individually and on behalf of all others similarly situated; and Bobby Lynn Allen, individually and on behalf of all others similarly situated, hereby appeal to the United States Court of Appeals for the Fifth Circuit from:

15-10854.843

1.      The Court's Order Granting Motion to Dismiss entered August 5, 2015 (ECF #36); and

2.      The Court's Final Judgment entered August 5, 2015 (ECF #37).

DATED this 31st day of August, 2015.

   /s/    *Christopher Graver*
Gary A. Gotto, Arizona Bar No. 007401
    (*pro hac vice*)
Christopher Graver, Arizona Bar No. 013235
    (*pro hac vice*)
KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, Arizona  85012
Tel:  (602) 248-0088
Fax:  (602) 248-2822
ggotto@kellerrohrback.com
cgraver@kellerrohrback.com

Mark C. Hill, SBN 09647400
John J. Shaw, SBN 24079312
MYERS ✶ HILL
2525 Ridgmar Blvd., Ste. 150
Fort Worth, TX 76116
Tel: (817) 731-2500
Fax: (817) 731-2501
mhill@myers-hill.com
jshaw@myers-hill.com

ATTORNEYS FOR PLAINTIFFS

Tab 3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JUDY HUNTER, ET AL.            §
                              §
VS.                           §        ACTION NO. 4:14-CV-663-Y
                              §
BERKSHIRE HATHAWAY, INC., and  §
ACME BUILDING BRANDS, INC.     §

FINAL JUDGMENT

In accordance with the order issued this same day and Federal
Rule of Civil Procedure 58, all claims are hereby DISMISSED WITH
PREJUDICE to their refiling.  All costs of Court under 28 U.S.C. §
1920 shall be borne by Plaintiffs.

SIGNED August 5, 2015.

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

FINAL JUDGMENT - Page Solo
TRM/chr

Tab 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JUDY HUNTER, ET AL.          §
                             §
VS.                          §          ACTION NO. 4:14-CV-663-Y
                             §
BERKSHIRE HATHAWAY, INC. and §
ACME BUILDING BRANDS, INC.   §

### ORDER GRANTING MOTION TO DISMISS

Pending before the Court is Defendants' Motion to Dismiss Plaintiffs' Original Complaint (doc. 16).  After consideration of the motion, the related briefs, and the applicable law, the Court concludes that the motion should be and hereby is GRANTED.

### I.  Factual Background

Plaintiffs' complaint alleges that they are current or retired employees of defendant Acme Building Brands, Inc. ("Acme").  Plaintiff Judy Hunter is Acme's Chief Financial Officer and a member of both the Acme Brick Company 401(k) Retirement and Savings Plan ("the 401(k) plan") Investment/Administrative Committee ("the 401(k) committee") and the Retirement/Administrative Committee ("the pension committee") for the Acme Brick Company Pension Plan ("the pension plan") .  Acme is the sponsor and a named fiduciary of both plans, and the committees are the plan administrators. All of the plaintiffs are participants in the plans.

In 2000, Justin Industries, Acme's parent, agreed to be acquired by defendant Berkshire Hathaway, Inc. ("Berkshire").  As a result, Justin and Berkshire entered into a merger agreement that contains the following provision:

ORDER GRANTING MOTION TO DISMISS - Page 1
TRM/chr

Section 5.7   Employee Matters

**(a) . . . . Parent [Berkshire] shall, and shall cause the Company [Acme] to, honor in accordance with their terms all employee benefit plans** (as defined in Section 3(3) of ERISA) and other employment, consulting, benefit, compensation or severance agreements, arrangements and policies of the Company (collectively, the "Company Plans"); **provided, however, that Parent [Berkshire] or the Company [Acme] may amend, modify or terminate any individual Company Plans in accordance with the terms of such Plans and applicable law** (including obtaining the consent of the other parties to and beneficiaries of such Company Plans to the extent required thereunder); **provided further, that notwithstanding the foregoing proviso, Parent [Berkshire] will not cause the Company [Acme] to** (i) reduce any benefits to employees pursuant to [the Company Plans] for a period of 12 months following the Effective Time, **(ii) reduce any benefit accruals to employees pursuant to any such Plans that are defined benefit plans, or (iii) reduce the employer contribution pursuant to any such Plans that are defined contribution pension plans. . . .**

(Compl. (doc. 1) 4, ¶15; Defs.' App. (doc. 17) 31) (emphasis added.)

Plaintiffs allege that at the time of this agreement, the pension plan was overfunded by approximately sixty million dollars.  As a result, Plaintiffs contend that this provision was "included in the Merger Agreement to secure and protect, both contractually and under ERISA, participants' future benefits under the Retirement Plans in light of new ownership, as well as the significantly overfunded financial position of the Pension Plan." (Compl. (doc. 1) 4, ¶16.)

Beginning in 2006, however, Berkshire allegedly contacted Acme about the possibility of imposing a "hard freeze" on the pension plan that would eliminate any future accruals of benefits for plan participants and would preclude participation in the pension plan by new employees.  Acme advised Berkshire that a hard freeze would violate section 5.7 of the merger agreement and ERISA.  Berkshire

ORDER GRANTING MOTION TO DISMISS - Page 2
TRM/chr

13

thereafter dropped the issue until the summer of 2012, when it informed Acme that it "wanted to move forward with reducing retirement benefits." (*Id.* 6, ¶23.)

During the 2012 discussions, Acme allegedly discovered that it had mistakenly reduced the 401(k) plan's company matching contribution from fifty percent to twenty-five percent for 2010 and 2011. Acme informed Berkshire that such a reduction was not permitted under section 5.7 of the merger agreement. Berkshire directed Acme not to make any retroactive corrections and further mandated that Acme not prospectively restore the company match to fifty percent. As a result, Acme's matching contribution remained at twenty-five percent through 2013.

In January 2013, Plaintiffs allege that Acme was forced by Berkshire to "adopt a 'soft freeze' immediately." (*Id.* 8, ¶28.) As a result, effective March 1, 2013, new employees were prevented from participating in the pension plan.

In 2014, Berkshire allegedly again contacted Acme about reducing or eliminating benefits in Acme's retirement plans. The committees, as plan administrators, reviewed and analyzed the plans and the merger agreement (both in its current and prior forms), considered other options, and also consulted outside counsel. Ultimately, the committees concluded that section 5.7 of the merger agreement was unambiguous and did not permit Acme to implement a 'hard freeze' or the reductions requested by Berkshire and previously mistakenly implemented in 2010 and 2011 but knowingly continued through 2013.

As a result of Berkshire's repeated requests to reduce these

benefits and alleged failure to permit Acme to return the matching contribution to fifty percent, an ethics report was filed with Berkshire's audit committee. Despite repeatedly seeking a resolution from this committee, none was forthcoming. As a result, on June 12, 2014, the 401(k) and pension-plan committees sent a letter to Acme's board of directors demanding that Acme retroactively restore the fifty-percent matching contributions. The letter threatened legal action if Acme did not make the requested payments.

Berkshire allegedly responded by directing Dennis Knautz, Acme's president and chief executive officer, to give the committees an ultimatum: either (1) agree to a "hard freeze" of the pension plan and restore the 401(k) plan's employer matching contribution to fifty percent, with the caveat that it could be changed anytime after 2014; or (2) agree to a "hard freeze" of the pension plan to be effective in five years and leave the 401(k) employer match at twenty-five percent. Knautz allegedly "reported that these alternatives were nonnegotiable, and that if neither of the alternatives were accepted by the Committees, then Berkshire . . . intended to divest itself of Acme as a subsidiary." (*Id.* 17, ¶ 55.) As a result, concerned both that section 5.7 precluded them from legally amending the plans in the manner in which Berkshire demanded and that their failure to do so would result in Berkshire's divestiture of Acme, the committees ultimately chose the first option and amended the pension plan accordingly on August 11, 2014.

As a result, Plaintiffs filed this suit. Plaintiffs seek declaratory relief under section 502(a)(3) of the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3) (West 2009), that (1) the terms of the plans were amended by section 5.7 of the merger agreement to include restrictions on changes to the plans as set forth in section 5.7, and (2) that the purported amendment to the plans dated August 11, 2014 violates the retirement plans, as amended by the merger agreement. Plaintiffs also contend that Acme breached its fiduciary duties to both plans under ERISA. *See* 29 U.S.C.A. § 1109(a) (West 2009). Plaintiffs further complain that Berkshire knowingly participated in Acme's breaches of fiduciary duties and also assert an alternative breach-of-contract claim against Berkshire. Plaintiffs seek declaratory and injunctive relief, damages, attorney's fees and costs. Defendants' motion seeks dismissal of all of Plaintiffs' claims.

## II.  Standard of Review

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted." This rule must, however, be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court. Rule 8(a) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (holding Rule 8(a)'s simplified pleading standard applies to most civil actions). As a result, "[a] motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale*

*Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105 (1983) (quoting Wright & Miller, *Federal Practice and Procedure* § 1357 (1969)).  The Court must accept as true all well-pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff.  *Kaiser Aluminum*, 677 F.2d at 1050.

The plaintiff must, however, plead specific facts, not mere conclusory allegations, to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  Indeed, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and his "factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 & 1974 (2007).  The Court need not credit bare conclusory allegations or "a formulaic recitation of the elements of a cause of action."  *Id.* at 1955.  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

In considering a motion to dismiss for failure to state a claim, "courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996).  Documents attached to or incorporated in the complaint are considered part of the plaintiff's pleading. *See* FED.

R. CIV. P. 10(c); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d
496, 498-99 (5th Cir. 2000); *Paulemon v. Tobin*, 30 F.3d 307, 308-09
(2nd Cir. 1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
896 F.2d 1542, 1555 n. 19 (9th Cir. 1990).  Documents a defendant
attaches to a motion to dismiss are considered a part of the pleadings
if they are referred to in the plaintiff's complaint and are central
to the claim.  *Collins*, 224 F.3d at 498-99.

### III.  Analysis

A.  Section 5.7 of the Merger Agreement

Defendants have admitted, for purposes of their motion, that
section 5.7 of the merger agreement constitutes an amendment to the
retirement plans.  (Defs.' Mem. in Supp. of Mot. to Dismiss (doc.
16-1) 10, n.4.)  But Defendants contend that, even so, Plaintiffs
cannot point to any "clear and express" contractual language in it
that plausibly grants them the lifetime, unalterable pension and
employer matching benefits they seek.  Because all of Plaintiffs'
claims are predicated on their interpretation of section 5.7,
Defendants contend all claims must be dismissed.  Plaintiffs counter
that it is unclear that the "'clear and express' language concept
discussed in welfare[-]plan cases is applicable in retirement plan
cases such as this one," (Pls.' Resp. (doc. 25) 4), and that, in any
event, that standard is met in this case.

Defendants' contention that Plaintiffs must plausibly allege
that the merger agreement clearly and expressly grants them the
lifetime pension and employer matching benefits they seek stems from

the Fifth Circuit's decision in *Spacek v. Maritime Ass'n*, 134 F.3d 283 (5th Cir. 1998), *abrogated on other grounds by Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739 (2004). In *Spacek*, the Fifth Circuit was presented with the question of whether pension-plan fiduciaries could, consistent with ERISA and contract law, apply a plan amendment, which would suspend pension benefits during re-employment following early retirement, to plan participants who retired prior to the plan amendment. *Id.* at 286-87. In determining that the parties' contractual provisions did not preclude application of the amendment to retirees' pension benefits, the court noted that the plan documents contained a "broad amendment provision" that permitted the trustees to "amend the Plan, from time to time, in any manner not in conflict with the terms of the Trust." *Id.* at 286, 293. The court then relied upon "[t]he strong weight of authority" in ERISA welfare-benefit-plan cases

> throughout the circuits indicat[ing] that, in the area of welfare benefits, which are not subject to ERISA's minimum vesting and accrual requirements, . . . a general amendment provision in a welfare benefits plan is of itself sufficient to unambiguously negate any inference that the employer intends for employee welfare benefits to vest contractually, and thus become unalterable, after the employee retires. *See Chiles v. Ceridian* Corp., 95 F.3d 1505, 1512 n. 2 (10th Cir. 1996) ("We recognize that the weight of case authority supports the . . . approach, that a reservation of rights clause allows the employer to retroactively change the medical benefits of retired participants, *even in the face of clear language promising company-paid lifetime benefits*." (emphasis added)).

*Id.* at 293. The court "acknowledged that courts have traditionally applied contract law in a manner that affords pension benefits greater protection than welfare benefits" but concluded that

> [b]ecause Congress has chosen to protect pensioners'
> expectations of retirement security statutorily, the courts
> need not endeavor--and indeed have no justification for
> endeavoring--to safeguard pensioners' interests by
> liberally applying equity-based theories of contract
> construction that deviate from contract laws' traditional
> focus on the intent of the parties as determined by the
> objective manifestations of that intent contained in the
> language of the parties' agreement.

*Id.* at 294-95. The court concluded that the application of the

amendment to the retirees did not violate the parties' contractual

obligations,[1] noting that

> "[E]xtra-ERISA commitments must be found in the plan
> documents and must be stated in clear and express
> language." [*Wise v. El Paso Natural Gas Co.*, 986 F.2d 929,
> 937 (5th Cir. 1993)]. "Courts may not lightly infer an
> intent' on the part of a plan to "voluntarily undertak[e]
> an obligation to provide vested, unalterable benefits."
> *Gable v. Sweetheart Cup Co.*, 35 F.3d 851, 855 (4th Cir.
> 1994). The presence of the broad amendment provision in
> the Plan leads us to conclude that the Plan's application
> of the Amendment to [Plaintiff] comports with the legally
> correct interpretation of the Plan. This is so because
> the amendment provision undercuts a conclusion that the
> Plan contains a clear and express intention to guarantee
> benefits to participants at a level higher than that
> statutorily required by ERISA.

*Id; see also Hargrave v. Commonwealth Gen. Corp.'s Long Term*

*Disability*, 430 F. App'x 256, 261 (5th Cir. 2011) ("Not only did

Commonwealth not use 'clear and express language' that it intended

to confer unalterable and irrevocable benefits to Hargrave, it used

clear and express language that it *did not* intend to do so. . . .

---

[1] The Fifth Circuit also decided that no violation of ERISA's "anti-cutback"
provision--29 U.S.C. § 1054(g)--had occurred, but that conclusion was later
abrogated by the Supreme Court. *See Cent. Laborers' Pension Fund v. Heinz*, 541
U.S. 739 (2004). ERISA's "'anti-cutback' rule . . . prohibits any amendment of
a pension plan that would reduce a participant's 'accrued benefit.'" *Id.* at 741.
The Court held that this rule prohibits an "amendment expanding the categories
of postretirement employment that trigger suspension of payment of early
retirement benefits already accrued." *Id.* The Court concluded that the plan's
amendment "eliminat[ed] or reduc[ed] an early retirement benefit that was earned
by service before the amendment was passed." *Id.* at 744.

ORDER GRANTING MOTION TO DISMISS - Page 9
TRM/chr

[by stating that] the company reserves the right to change or discontinue this Plan."); *Halliburton Co. Benefits Comm. v. Graves*, 463 F.3d 360, 377 (5th Cir. 2006) ("An employer 'vests' a benefit under ERISA when it intends to confer unalterable and irrevocable benefits on its employees, and it does so by using clear and express language."). Other circuit courts' decisions support Defendants' contention that "clear and express language" is required to confer lifetime, unalterable benefits. *See UAW v. Skinner*, 188 F.3d 130, 139 (3d Cir. 1999) ("Because vesting of welfare plan benefits constitutes an extra-ERISA commitment, an employer's commitment to vest such benefits is not to be inferred lightly and must be stated in clear and express language."); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998) ("the intent to vest 'must be found in the plan documents and must be stated in clear and express language'") (quoting *Wise*, 986 F.2d at 937).

Recently, in *M&G Polymers USA, LLC. v. Tackett*, 135 S. Ct. 926 (2015), the Supreme Court referred to the Sixth Circuit's requirement in *Sprague* that an intent to vest lifetime welfare-plan benefits be stated in clear and express language. In *M&G Polymers*, the Court abrogated the Sixth Circuit's decision in *International Union, United Automobile, Aerospace, and Agricultural Implement Workers (UAW) v. Yard-Man, Inc.*, 716 F.2d 1476 (1983), in which the Sixth Circuit had concluded that a clear manifestation of intent was not required regarding the duration of a benefit once clearly conferred. 716 F.2d at 1481 n.2. The Supreme Court concluded that the Sixth Circuit had improperly placed a "thumb on the scale in favor of vested retiree

benefits in all collective-bargaining agreements [that had] no basis in ordinary principles of contract law." *M&G Polymers*, 135 S. Ct. at 935. In reaching its conclusion, the Court noted that the Sixth Circuit's decision in *Yard-Man* was inconsistent with its decision in *Sprague*:

> The Court of Appeals also failed even to consider the traditional principle that courts should not construe ambiguous writings to create lifetime promises. See 3 A. Corbin, Corbin on Contracts § 553, p. 216 (1960) (explaining that contracts that are silent as to their duration will ordinarily be treated not as "operative in perpetuity" but as "operative for a reasonable time" (internal quotation marks omitted)). The court recognized that "traditional rules of contractual interpretation require a clear manifestation of intent before conferring a benefit or obligation," but asserted that "the duration of the benefit once clearly conferred is [not] subject to this stricture." *Yard-Man, supra,* at 1481 n.2. In stark contrast to this assertion, however, the court later applied that very stricture to noncollectively bargained contracts offering retiree benefits. See *Sprague v. General Motors Corp.*, 133 F.3d 388, 400 (C.A. 6 1998) (C.A.6 1998) ("To vest benefits is to render them forever unalterable. Because vesting of welfare plan benefits is not required by law, an employer's commitment to vest such benefits is not to be inferred lightly; the intent to vest must be found in the plan documents and must be stated in clear and express language" (Internal quotation marks omitted)). The different treatment of these two types of employment contracts only underscores *Yard-Man*'s deviation from ordinary principles of contract law.

*M&G Polymers*, 135 S. Ct. at 936-37.

Although the parties' supplemental briefs dispute the extent to which the *M&G Polymers* decision supports their arguments,[2] one

---

[2] Defendants believe the Supreme Court's decision in *M&G Polymers* is "in lock-step" with the Fifth Circuit's requirement in *Halliburton* and *Spacek* that clear and express language be used to confer lifetime benefits. Plaintiffs dispute that contention and note that in Justice Ginsburg's concurring opinion, in which three other justices joined, Justice Ginsburg concluded that "no rule requires 'clear and express' language in order to show that the parties intended health-care benefits to vest. "Constraints upon the employer after the expiration date of a collective-bargaining agreement," we have observed, may be derived from the agreement's "explicit terms," but they "may arise as well from . . . .

ORDER GRANTING MOTION TO DISMISS - Page 11
TRM/chr

thing is clear: this Court must construe the parties' agreement using ordinary principals of contract law. And under such principles, as the *M&G Polymers'* majority noted, the parties' intent to vest lifetime benefits must be unambiguously reflected in their agreement. For "when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life." *Id.* at 937. Rather, such benefits are "operative for a reasonable time." *Id.* at 936.

Unlike the welfare-benefit-plan cases cited by Defendants, the contractual language alleged to confer unalterable pension benefits and employer matching contributions is not in a separate section of the parties' agreement from Berkshire's reservation-of-rights clause. Instead, that language is appended as provisos to the reservation-of-rights clause itself. That is, subparagraphs (ii) and (iii) limit Berkshire's ability to require that Acme amend or discontinue the plans.

But fatal to Plaintiffs' argument is the fact that the parties' agreement is silent regarding the duration of those allegedly vesting provisos. The agreement does not clearly state the parties' intention that the benefits allegedly granted in those two clauses operate in perpetuity. Thus, because the alleged vesting language is ambiguous regarding its duration, it cannot be read to vest a certain level of benefits for life. Instead, these clauses must be interpreted

---

implied terms of the expired agreement." *M&G Polymers*, 135 S. Ct. 939 (concurring opinion) (quoting *Litton Fin.* Printing *Div.* v. *Litton Business Sys., Inc.* v. *NLRB*, 501 U.S. 190, 203, 207 (1991)).

to impose a limitation on Berkshire's ability to require a plan amendment or dissolution only for a reasonable time. Plaintiffs' complaint does not allege that the period from the date of execution of the agreement until the date of adoption of the plan amendments-- over fourteen years--was not a reasonable period of time under the circumstances. Consequently, dismissal under Rule 12(b)(6) is appropriate.

## B. Fiduciary Duty

Plaintiffs claim that Acme breached its fiduciary duties to the plans' participants and beneficiaries by failing to make all employer contributions and benefit payments required under the 401(k) plan, as amended by section 5.7 of the merger agreement, and by implementing a hard freeze of the pension plan, in contravention of section 5.7 of the merger agreement. Plaintiffs thus complain that Acme's August 11, 2014 amendment to the plans provided for lesser benefits than those allegedly required by section 5.7 of the merger agreement. Defendants contend that Plaintiffs have failed to state plausible claims for breach of fiduciary duty because Acme acted akin to a settlor of a trust rather than in a fiduciary capacity when it implemented the amendment about which Plaintiffs complain:

> Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries. As we said with respect to the amendment of welfare benefits plans . . . , employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans. When employers undertake those actions, they do not act as fiduciaries, but are analogous to the settlors of a trust. . . . Given ERISA's definition of fiduciary and the applicability of the duties that attend that status, we think that the rules regarding fiduciary capacity--including the settlor-fiduciary

distinction--should apply to pension and welfare plans alike.

*Lockheed Corp. v. Spink*, 517 U.S. 882, 890-91 (citations omitted); *see also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999) ("ERISA's fiduciary duty requirement simply is not implicated where Hughes, acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated."). The Court agrees that Plaintiffs have failed to state plausible claims for breach of fiduciary duties against Acme. As a result, Plaintiffs' claim that Berkshire knowingly participated in Acme's breach of fiduciary duty also fails.

C.  Alternative Breach of Contract Claim

Plaintiffs alternatively assert a breach-of-contract claim against Berkshire, contending that Berkshire breached the merger agreement by preventing Acme from retroactively restoring the 401(k) matching contribution and by causing Acme to implement the hard freeze to the pension plan. Defendants seek dismissal of this claim on the grounds of preemption, contending that Plaintiffs' alternative claim is foreclosed by the Fifth Circuit's decision in *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209 (5th Cir. 1992).

In that case, the court concluded that the plaintiffs' state-law claims, including breach of contract based in part on their employer's amendment of its employee-benefit plan, were preempted under ERISA. The Court noted that "a state law will be pre-empted if it has a connection with or reference to [an ERISA] plan" and that "the fact

that a claim sought damages measured by pension benefits sufficed as the requisite connection to an employee benefit plan for preemption purposes." *Id.* at 1218 (quotations omitted).  The court concluded that the plaintiffs' claims were preempted by ERISA because they

> focus on Mobil's amendment of an ERISA-governed employee benefit plan and Mobil's disclosure to its employees of the terms of the plan.  In addition to calculating their damages by computing lost benefits under the plan, a court adjudicating appellants' claims of fraudulent scheme to reduce the work force would have to examine, at a minimum, the operation of the plan prior to the amendment, the language of the plan amendments, and Mobile's communication to its employees about the terms of the plan amendments. Given the breadth of the [preemption] test, we find that these connections are adequate to warrant preemption.

*Id.*

Here, resolution of Plaintiffs' breach-of-contract claim will require interpretation of section 5.7 of the merger agreement and its effect on the 401(k) and pension plans.  And the calculation of damages would also require computing lost benefits under the plan. Indeed, Plaintiffs allege that Berkshire's breach of section 5.7 of the merger agreement "resulted and continues to result in the loss of matching funds, as well as the ongoing loss of returns on required by unfunded 401(k) contributions from the date they should have been made." (PLS.' Compl. (doc. 1) 30, ¶109.).  Consequently, the Court agrees with Defendants that Plaintiffs' breach-of-contract claim is preempted.

## IV.  Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiffs' Original Complaint (doc. 16) is GRANTED.  Plaintiffs'

claims are DISMISSED WITH PREJUDICE to their refiling.

SIGNED August 5, 2015.

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

ORDER GRANTING MOTION TO DISMISS - Page 16
TRM/chr

15-10854.841

Tab 5

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

|  |  |
|---|---|
| JUDY HUNTER, on behalf of herself, individually, and on behalf of all others similarly situated; as a member of the Acme Brick Company 401(k) Retirement and Savings Plan Investment/Administrative Committee; and as a member of the Acme Brick Company Pension Plan Retirement/Administrative Committee; ANITA GRAY, individually, and on behalf of all others similarly situated; and BOBBY LYNN ALLEN, individually, and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CASE NO. _____ |
| BERKSHIRE HATHAWAY INC. and ACME BUILDING BRANDS, INC., | ) ) ) |
| Defendants. | ) ) ) |

**ORIGINAL COMPLAINT**

Plaintiffs Judy Hunter ("*Hunter*"), a fiduciary of and participant in the Acme Brick Company 401(k) Retirement and Savings Plan (the "*401(k) Plan*") and the Acme Brick Company Pension Plan (the "*Pension Plan*") (collectively, the 401(k) Plan and Pension Plan are referred to as the "*Retirement Plans*"), in her capacities as such, on behalf of the Retirement Plans and the other current or former participants therein, and on behalf of all others similarly situated; Anita Gray ("*Gray*"), individually and on behalf of all others similarly situated; and Bobby Lynn Allen ("*Allen*"), individually and on behalf of all other similarly situated (collectively, Hunter, Gray and Allen are referred to herein as the "*Plaintiffs*"), bring this action against Berkshire Hathaway Inc. ("*Berkshire Hathaway*") and Acme Building Brands, Inc. ("*Acme*") (collectively, "*Defendants*"), and respectfully show the Court as follows:

## I.  INTRODUCTION

1.      This case involves a promise by Defendant Berkshire Hathaway to the employees of a company it acquired in 2000.  Simply put, Berkshire Hathaway promised, as part of the acquisition, not to make certain changes to the Retirement Plans that would reduce the benefits thereunder.  Since that time, the employees have stuck with the company through good times and bad, in anticipation that their benefits under the Retirement Plans would ultimately compensate them fairly.  Now, almost fourteen years later, Berkshire Hathaway has broken its promise. Through its ownership and control of Acme, which is a fiduciary of the Retirement Plans, and through strong-arm tactics against Acme's management, Berkshire Hathaway has instigated changes that cause the 401(k) Plan to be underfunded, and to completely freeze the accrual of benefits under the Pension Plan.  Berkshire Hathaway's agreement is either an amendment to the Retirement Plans, in which case the employees are entitled under ERISA to the enforcement of the Retirement Plans in accordance with their terms, or, in the alternative, it is a contract for the benefit of the employees, and its breach entitles the employees to damages.

## II.  PARTIES

2.      Plaintiff Judy Hunter is an individual residing in Aledo, Parker County, Texas. Ms. Hunter is the Chief Financial Officer of Defendant Acme, and is also a member of the Acme

Brick Company 401(k) Retirement and Savings Plan Investment/Administrative Committee (the "401(k) Committee") and the Acme Brick Company Pension Plan Retirement/Administrative Committee (the "Pension Committee").  Ms. Hunter, individually, is a participant in the Retirement Plans and, to the extent her claims are governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), has standing to bring this action pursuant to 29 U.S.C. §1132(a). Ms. Hunter, as a member of the 401(k) Committee and the Pension Plan Committee, also has standing as a fiduciary to bring this action pursuant to 29 U.S.C. §1132(a).

3.      Plaintiff Anita Gray is an individual residing in Tarrant County, Texas.  Gray is the Assistant Controller of Defendant Acme, is a participant in the Retirement Plans and, to the extent her claims are governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), has standing to bring this action pursuant to 29 U.S.C. §1132(a).

4.      Plaintiff Bobby Lynn Allen is an individual residing in Hood County, Texas. Allen is a retired former employee of Defendant Acme, is a participant in the 401(k) Plan and, to the extent his claims are governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), has standing to bring this action pursuant to 29 U.S.C. §1132(a).

5.      Non-parties the Retirement Plans are employee benefit plans governed by ERISA. The Retirement Plans are administered in Fort Worth, Texas, and pursuant to §1002(16) of ERISA, the 401(k) Committee has been appointed the Plan Administrator of the 401(k) Plan, and the Pension Committee has been appointed the Plan Administrator of the Pension Plan.

6.      Defendant Acme Building Brands, Inc. is a corporation that maintains its principal place of business in Fort Worth, Texas.  Acme is the Plan Sponsor of the 401(k) Plan and the Pension Plan in accordance with 29 U.S.C. §1002(15)(B), and is a named fiduciary under both Retirement Plans.

7.      Defendant Berkshire Hathaway Inc. is a publicly-traded corporation listed on the New York Stock Exchange.  It is organized under the laws of Delaware with its principal place of business in Omaha, Nebraska, and does business in the State of Texas.   Berkshire Hathaway owns and controls Defendant Acme.

### III.    JURISDICTION AND VENUE

8.    Berkshire Hathaway has caused events to occur in the Northern District of Texas that give rise to the claims herein.

9.    This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. §1331, 29 U.S.C. §1132(e)(1), and 28 U.S.C. §1367(a).  Jurisdiction additionally exists pursuant to 28 U.S.C. §1332 between Plaintiffs and Defendant Berkshire Hathaway.

10.    Venue lies in this District pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391, in that it is the District where the plan is administered, and this is the District in which all or a substantial part of the events or omissions giving rise to the claims occurred.

### IV.    FACTS

**A.    Creation of the Retirement Plans.**

11.    Non-party Justin Industries, Inc. ("Justin Industries") and its affiliated companies have been Fort Worth area institutions since their founding in the late 1800's.  Justin Industries established the 401(k) Plan and the Pension Plan to provide retirement benefits and security for its employees who complete a period of faithful service.  These Retirement Plans covered employees of Justin Industries and affiliated entities, including Acme Brick Company and Justin Brands.

12.    The 401(k) Plan is a "defined contribution plan" under ERISA, 29 U.S.C. §1002(34), and provides, in part, for the employer to match a percentage of an employee's contributions to the 401(k) Plan on an annual basis, up to 5% of the employee's compensation. As of the date of the Merger Agreement, the employer's percentage match was 50%.

13.    The Pension Plan is a "defined benefit pension plan" under ERISA, 29 U.S.C. §1002(35), is funded in its entirety by the employer, and provides, in part, for employees to accrue benefits provided by the Pension Plan based on the length of their service.

14.    In 2002, Acme became the Plan Sponsor for both Retirement Plans, as well as a named fiduciary of both Retirement Plans.

**B.    Berkshire Hathaway Acquires Justin Industries (Which Owned 100% of Acme's Equity Interests), Agrees to Honor all Terms of the Retirement Plans, and Agrees not to Cause a Reduction in the Retirement Plans' Benefits.**

15.    In 2000, Justin Industries, through duly authorized action of its Board of Directors, agreed to be acquired by Berkshire Hathaway and entered into those parties' Agreement and Plan of Merger ("***Merger Agreement***").  Following the merger transaction, the Pension Plan was overfunded by approximately 79%, or approximately $60 million.    To protect the rights of participants in the Retirement Plans, the Merger Agreement contained the following provision amending the terms of the Retirement Plans and other benefit plans:

Section 5.7    Employee Matters

(a)    . . . . Parent [Berkshire Hathaway] shall, and shall cause the Company to, honor in accordance with their terms all employee benefit plans (as defined in Section 3(3) of ERISA) and other employment, consulting, benefit, compensation or severance agreements, arrangements and policies of the Company (collectively, the "Company Plans"); provided, however, that Parent or the Company may amend, modify or terminate any individual Company Plans in accordance with the terms of such Plans and applicable law (including obtaining the consent of the other parties to and beneficiaries of such Company Plans to the extent required thereunder); provided further, that notwithstanding the foregoing proviso, Parent will not cause the Company to (i) reduce any benefits to employees pursuant to [the Company Plans] for a period of 12 months following the Effective Time, (ii) reduce any benefit accruals to employees pursuant to any such Plans that are defined benefit pension plans, or (iii) reduce the employer contribution pursuant to any such Plans that are defined contribution pension plans. . . .

16.    These protections were included in the Merger Agreement to secure and protect, both contractually and under ERISA, participants' future benefits under the Retirement Plans in light of new ownership, as well as the significantly overfunded financial position of the Pension Plan. The Merger Agreement, at Section 8.6, recognizes the creation of third-party beneficiaries of the Merger Agreement under three identified sections of the Merger Agreement, expressly including Section 5.7 of the Merger Agreement.

17.    The limitations on changes to the Retirement Plans set forth in the Merger Agreement are substantive rights conferred on third-party beneficiaries.  All persons who were or have become participants in either of the Retirement Plans since the date of the Merger Agreement are third-party beneficiaries of Section 5.7 of the Merger Agreement.

18.    The limitations on changes to the Retirement Plans set forth in the Merger Agreement constitute amendments to the Retirement Plans by action of the Board of Directors, as authorized by Article XV of the 401(k) Plan and Article XVI of the Pension Plan (or the applicable section of such Retirement Plans as may then have been in effect).

19.    The purpose and intent of Section 5.7 of the Merger Agreement was further confirmed and stated in the Justin Industries Schedule 14D-9 filed with the Securities Exchange Commission ("SEC") in connection with its acquisition by Berkshire Hathaway.  That certified public filing acknowledged that the Merger Agreement provided that Berkshire Hathaway:

> "…shall, and shall cause the Company to, maintain the Company's benefits plans and shall not cause the Company to…(ii) reduce any benefit accruals to employees pursuant to any such plans that are defined benefit pension plans, or (iii) reduce the employer contribution pursuant any such plans that are defined contribution pension plans."

20.    The Merger Agreement was negotiated, approved and signed by Warren Buffett as Chief Executive Officer of Berkshire Hathaway, and negotiated and approved by Marc Hamburg and another member of the Board of Directors of Berkshire Hathaway. Following the merger transaction, Berkshire Hathaway owned and controlled 100% of Justin Industries and all of its subsidiaries, including Acme.  At all times since the acquisition, Warren Buffett and Marc Hamburg have been the Chief Executive Officer and Chief Financial Officer, respectively, of Berkshire Hathaway.  Further, at all times relevant to this Complaint, Mr. Buffett and Mr. Hamburg have also comprised the majority of Acme's three-member Board of Directors.

**C.    Berkshire Hathaway's Efforts to Eliminate or Reduce Employee Benefits in Violation of the Terms of Acme's Retirement Plans and Section 5.7 of the Merger Agreement.**

21.    Section 5.7 of the Merger Agreement requires Acme to make substantial contributions to the Retirement Plans for the benefit of the participants, which reduces Acme's value to its shareholder, Berkshire Hathaway.   Beginning no later than 2006, Berkshire Hathaway began proposing to Acme that it reduce its obligations to the participants under the Retirement Plans.

22.    In 2006, Mr. Hamburg, in his capacity as CFO of Berkshire Hathaway, and on information and belief acting at the request of Mr. Buffett, contacted Acme about imposing a "hard freeze" on the Pension Plan.  Such a "hard freeze" would eliminate any future accruals of benefits for Pension Plan participants and would preclude participation in the Pension Plan by new employees.   The primary issue in the 2006 discussions between Acme and Berkshire Hathaway was whether a "hard freeze" was permissible under the language contained in Section 5.7 of the Merger Agreement.   Acme engaged outside ERISA counsel, and reviewed the legal and regulatory implications of such an action.  Acme advised Berkshire Hathaway that a "hard freeze" was not appropriate, and would violate Section 5.7 of the Merger Agreement and ERISA. Mr. Hamburg agreed with that assessment.  Mr. Hamburg subsequently stated that Berkshire Hathaway may decide to consult another ERISA attorney regarding the requirements of Section 5.7.  However, Acme had no further direct communication about changes to either of Acme's Retirement Plans from Mr. Hamburg or anyone else from Berkshire Hathaway until the summer of 2012.

23.    In the summer of 2012, Mr. Hamburg again contacted Acme, again purportedly at the request of Mr. Buffett, about a "hard freeze" of the Acme Pension Plan.  Although Mr. Hamburg represented to Acme that Berkshire Hathaway had not consulted any ERISA attorney regarding the proposed "hard freeze" since the parties' communications in 2006, he advised Acme that Berkshire Hathaway nevertheless wanted to move forward with reducing retirement benefits.

24.     In connection with these discussions in late 2012, Acme informed Mr. Hamburg that it discovered that Acme officers had mistakenly reduced the 401(k) Plan company match from 50% to 25% for 2010 and 2011.[1]  Acme informed Mr. Hamburg that, after consultation with its ERISA counsel, Acme concluded that such a reduction was not permitted under Section 5.7 of the Merger Agreement and in light of Berkshire Hathaway's complete control over Acme. Despite Acme's position, and without seeking legal advice on behalf of Berkshire Hathaway, Mr. Hamburg, on behalf of Berkshire Hathaway and in his capacity as a director of Acme, directed Acme not to make any retroactive corrections to the 401(k) company match for 2010 and 2011.

25.     When Acme informed Mr. Hamburg of its intention to return the company match for employee contributions to 50% for both 2012 and 2013, Mr. Hamburg, on behalf of Berkshire Hathaway and his capacity as a director of Acme, directed Acme not to restore the company match to 50%.

26.     On account of the direction of Berkshire Hathaway, the employee contribution match has remained at 25% from 2010 through 2013.

27.     During the discussions about Berkshire Hathaway's desire to reduce or eliminate the company's Retirement Plans' benefits, and why those changes would violate the Retirement Plans and Section 5.7 of the Merger Agreement, Mr. Hamburg stated and further indicated on several occasions that he agreed with Acme's interpretation of Section 5.7 of the Merger Agreement, including the fact that Section 5.7 forbade future benefit reductions in the Retirement Plans for at least all current participants.  Despite his agreement on the meaning and impact of Section 5.7 on multiple occasions, Mr. Hamburg and Berkshire Hathaway continued to

---

1.   As part of a bargaining agreement, the 401(k) Plan was amended in 2006 to add participation by a small number of union employees (~30) upon different terms as set forth in the union's collective bargaining agreement.  This bargaining agreement provided a stipulated 25% match. As a result, with respect to these participants, and as to the 401(k) Plan only, no sums are sought in this action.

insist that Acme institute a "hard freeze" of the Pension Plan by terminating all future benefit accruals.

28.     In the winter of 2012, Mr. Hamburg, on behalf of Berkshire Hathaway and in his capacity as a director of Acme, requested that Acme, its outside ERISA counsel, and its in-house counsel once again review the Merger Agreement and applicable authorities in order to confirm Acme's previous assessment of the legal, regulatory, and ethical prohibitions on implementing a "hard freeze" of the Pension Plan.   After such review and a conference call among Acme's attorneys, Ms. Hunter and Mr. Hamburg on January 31, 2013, Mr. Hamburg emailed Ms. Hunter the same day, stating that Mr. Buffett insisted that Acme adopt a "soft freeze" immediately, which would prevent any new employees from participating in the Pension Plan.   Acme adopted a "soft freeze" effective March 1, 2013.

**D.     The Committees Have Exclusive and Full Discretionary Authority to Construe and Interpret Their Respective Plans and Determine Any Amounts Payable Thereunder.**

29.     Pursuant to Section 12.1 of the 401(k) Plan, Acme appointed the 401(k) Committee to be responsible for the administration of the 401(k) Plan.   Section 12.1 of the 401(k) Plan further provides that Acme is a named fiduciary under the 401(k) Plan, that all action taken by the 401(k) Committee with respect to the 401(k) Plan is deemed action taken by Acme, and that Acme assumes fiduciary responsibility for actions taken by the 401(k) Committee in the absence of gross negligence or willful misconduct.

30.     Similarly, pursuant to Section 10.1 of the Pension Plan, Acme appointed the Pension Committee to be responsible for the administration of the Pension Plan.   Section 10.1 of the Pension Plan further provides that Acme is a named fiduciary under the Pension Plan, that all action taken by the Pension Committee with respect to the Pension Plan is deemed action taken by Acme, and that Acme assumes fiduciary responsibility for actions taken by the Pension Committee in the absence of gross negligence or willful misconduct.

31.     Under ERISA, fiduciaries are required to act "solely in the interest of the participants and beneficiaries" of a plan (29 U.S.C. §1104(a)(1)), for the exclusive purpose of

**ORIGINAL COMPLAINT**                                                                                     **Page 8**

providing plan benefits and defraying reasonable expenses of plan administration (29 U.S.C. §1104(a)(1)(A)), and in accordance with documents and instruments governing the plan (29 U.S.C. §1104(a)(1)(D)). Thus, any fiduciary of either of the Retirement Plans has a duty to act in accordance with the terms of that Retirement Plan, to ensure that all contributions and payment of all benefits required by that Retirement Plan are made as required, and to act to address or prevent a violation of that Retirement Plan.

32.     Section 12.2 of the 401(k) Plan further grants the 401(k) Committee "such powers as may be necessary to discharge its duties," expressly including the power and duty to "construe and interpret the Plan" and "determine the amount…of payment of any benefits hereunder." Under Section 12.3, the 401(k) Committee is given exclusive authority to determine a participant's entitlement to payment of benefits under the 401(k) Plan and the "full discretionary authority to determine all questions arising in the administration, interpretation and application of the Plan." Section 12.3 further provides that any decision of the 401(k) Committee in these regards "shall be final and binding on all parties."

33.     Section 10.2 of the Pension Plan further grants the Pension Committee "such powers as may be necessary to discharge its duties," expressly including the power and duty to "construe and interpret the Plan" and "determine the amount…of payment of any benefits hereunder."  Under Section 10.3, the Pension Committee is also given exclusive authority to determine a participant's entitlement to payment of benefits under the Pension Plan and the "full discretionary authority to determine all questions arising in the administration, interpretation and application of the Plan." Section 10.3 further provides that any decision of the Pension Committee in these regards "shall be final and binding on all parties."

**E.     The Committees Conduct a Thorough and Diligent Review, and Determine Berkshire Hathaway's Actions Violate Section 5.7, the Retirement Plans and ERISA.**

34.     In January 2014, Berkshire Hathaway again contacted Acme about reducing or eliminating benefits in the Retirement Plans.  Pursuant to their obligations and authority under the terms of the Retirement Plans and ERISA, the Committees began an extensive, thorough process to diligently and prudently review the circumstances and issues involved with respect to Acme's and Berkshire Hathaway's actions and directions with respect to the Merger Agreement, the 401(k) Plan, the Pension Plan, and ERISA.

35.     As to their respective 401(k) Plan and Pension Plan, the Committees analyzed, construed, and interpreted the terms of the Merger Agreement to which each Retirement Plan and its participants are third party beneficiaries, the terms of the Retirement Plans (as amended by Section 5.7 of the Merger Agreement), the application of Acme's and Berkshire Hathaway's actions to the terms of the Merger Agreement and the Retirement Plans, and voluminous documentation related to such actions.   Moreover, the 401(k) Committee also analyzed, construed, and interpreted the participants' entitlement to benefits and the amount of benefits that should be paid under the 401(k) Plan.    The Committees also engaged independent outside ERISA legal counsel to assist in these efforts.   The Committees prudently and diligently undertook these efforts, and further evaluated potential appropriate responses and possible alternatives that may exist to Berkshire Hathaway's positions and directives in light of i) Section 5.7 of the Merger Agreement, ii) the respective Retirement Plans, iii) Berkshire Hathaway's communications, and iv) the responsibilities of the members of the Committees to act solely in the best interests of the participants and beneficiaries of the respective Retirement Plans.   These issues were also discussed in the context of the upcoming yearly audit of the 401(k) Plan commencing in June of 2014 and associated disclosures.

36.     The Committees reviewed in detail the facts and circumstances, including those captured in the written emails and recordings of telephone conversations with Mr. Hamburg of Berkshire Hathaway, in order to fully understand and appreciate the tone and context of such communications.  The Committees also continued their review of Acme's stated positions, in both its corporate and fiduciary capacities, and reviewed and discussed the analysis and information provided by the Committees' independent outside ERISA counsel.

37.     The Committees further reviewed and investigated the timeline of the negotiation of the merger and drafts of the Merger Agreement, the fact that the most substantive revisions to the original draft of the Merger Agreement were made with respect to Section 5.7, the impact of those revisions, and how Section 5.7 was described in the transaction's Schedule 14D-9 filed with the SEC.

38.     The 401(k) Committee specifically analyzed Section 5.7, and in particular, the phrase "reduce the employer contribution pursuant to any such Plans that are defined contribution pension plans." The 401(k) Committee considered both the plain meaning of such phrase, as well as how Acme has historically made the contributions provided for by the 401(k) Plan.  With respect to Section 5.7(iii), the 401(k) Committee concluded that the phrase "the employer contribution pursuant to any such Plans that are defined contribution pension plans" meant Acme's match of 50% up to 5% of the employee's salary.  Based on its review and investigation, the 401(k) Committee found that the provisions of Section 5.7 of the Merger Agreement were clear and unambiguous, and were further supported by all materials it examined in addition to the Merger Agreement.

39.     The Pension Committee also specifically analyzed Section 5.7, and in particular, the phrase "reduce any benefit accruals to employees pursuant to any such Plans that are defined benefit pension plans." The Pension Committee considered both the plain meaning of such

phrase as well as the revisions to the Merger Agreement prior to its execution, that the Pension Plan was significantly overfunded at the time of the Merger, and how the term "benefit accruals" has been defined by the Courts. The Pension Committee found the phrase "benefit accruals" in Section 5.7 meant future accruing benefits and any benefit accruing in the future under the Pension Plan.   The Pension Committee also considered what would occur with respect to benefits under Berkshire Hathaway's proposed amendments.  With respect to Section 5.7(ii), the Pension Committee determined the phrase "reduce any benefit accruals to employees pursuant to any such Plans that are defined benefit pension plans" precludes a "hard freeze" of the Pension Plan.  Based on its review and investigation, the Pension Committee found that the provisions of Section 5.7 of the Merger Agreement were clear and unambiguous, and were further supported by all materials it examined in addition to the Merger Agreement.

40.     In considering the content of Marc Hamburg's statements, on behalf of Berkshire Hathaway and in his capacity as a director of Acme, with respect to the 401(k) Plan company match, as well as his tone, his demeanor, the circumstances in which those statements were made, and the number of times he made such statements, the 401(k) Committee determined his statements were clearly directives to Acme.

41.     In reaching their determinations, the Committees members also discussed and agreed that based on their experience, when Berkshire Hathaway indicated its position on an issue, it caused Acme to act in accordance with that position.  Based upon the manner in which Berkshire Hathaway had run Acme since its acquisition, if an employee of Acme acted contrary to a directive of Marc Hamburg or Warren Buffett, it was understood that there would be adverse consequences, including possible termination.

42.     In light of its extensive detailed analysis and review, the 401(k) Committee unanimously determined that Berkshire Hathaway caused the reduction in Acme's matching

contribution to the 401(k) Plan from 50% to 25% in 2012 and 2013, and that Berkshire Hathaway also caused Acme's failure to retroactively increase the match to 50% for 2010 and 2011.

43.     The Committees' review also included consideration and acceptance of Acme's position that all employees of all corporations which are members of a controlled group of corporations (as in Berkshire Hathaway's and Acme's case) would be treated as employed and controlled by a single entity or employer.  Such treatment protects participants' rights from being violated by organizational manipulations or undue influence.   Based on the Committees' observations during this disputed matter, the Committees concluded that a parent can likely cause a 100%-owned subsidiary to do whatever it wants, either overtly or surreptitiously.  The Committees found this particularly true in light of their knowledge and experience with respect to Berkshire Hathaway's ownership and control of Acme.  The Committees found that both avenues have been actually demonstrated and attempted by Berkshire Hathaway to reduce benefits in the Retirement Plans.

44.     The 401(k) Committee also reviewed the past and pending requests for benefit disbursements from the 401(k) Plan and unanimously determined that 401(k) Plan participants have not been paid all benefits owed to them from the 401(k) Plan for the years 2011-2014.  The 401(k) Committee also found that under the 401(k) Plan, all pending and future payments should include a 50% matching contributions for those years with all earnings thereon.

**F.     Berkshire Hathaway's Audit Committee Fails to Act or Resolve Issues Submitted to It.**

45.     As part of the efforts to address concerns and ethical considerations related to Berkshire Hathaway's attempts to reduce benefits in violation of the Retirement Plans, Section 5.7 of the Merger Agreement, and ERISA, reports were filed under the Berkshire Hathaway

Code of Business Conduct and Ethics ("Code").  Pursuant to its express terms the Code applies to "Covered Parties," consisting of all directors, officers, and employees of Berkshire Hathaway and its subsidiaries.

46.     A purpose of the Code is to "emphasize the Company's commitment to ethics and compliance with the law."  The Code also provides that when "[c]onfronted with ethically ambiguous situations, the Covered Parties should remember the Company's commitment to the highest ethical standards and seek advice from supervisors, managers or other appropriate personnel to ensure that all actions they take on behalf of the Company honor this commitment." The Code further provides that "Obeying the law, both in letter and in spirit, is the foundation on which the Company's ethical standards are built."

47.     The Code further states, "When in doubt, remember Warren Buffett's rule of thumb:   '. . . I want employees to ask themselves whether they are willing to have any contemplated act appear the next day on the front page of their local paper – to be read by their spouses, children and friends – with the reporting done by an informed and critical reporter.'" The Code commits that "[n]o retaliatory action of any kind will be permitted against anyone making such a report in good faith, and the Company's Audit Committee will strictly enforce this prohibition."

48.     In accordance with the Code's policy and instructions, beginning in January, 2014, several reports were filed over several months requesting guidance and assistance from the Berkshire Hathaway Audit Committee, including confirmation that any threatened removal of the Committees' members or any other retaliation would not occur as a result of their good faith submissions and other actions in furtherance of their fiduciary duties.  In response to the first report filed, a law firm hired by Berkshire Hathaway requested an interview of Ms. Hunter.  At the beginning of that interview, Ms. Hunter told Berkshire Hathaway's counsel that she was

represented by separate ERISA counsel in both her capacity as the CFO of Acme and in her capacity as a member of the Committees of the Retirement Plans.  In addition, Ms. Hunter reminded Berkshire Hathaway's counsel that she was also a participant in the Retirement Plans. Ms. Hunter requested that her counsel in both her official capacities participate in her interview. Berkshire Hathaway's counsel refused to allow Ms. Hunter's counsel to be involved and went forward with a lengthy interview of her.  Berkshire Hathaway's counsel further advised Ms. Hunter that her interview constituted privileged communications owned by Berkshire Hathaway only, and further wrongfully instructed her that she could not share anything discussed in the interview with the other fiduciaries, counsel for the Retirement Plans' Committees, Acme's ERISA counsel, or any other person.

49.     Thereafter, Berkshire Hathaway's counsel issued a memorandum.  Ms. Hunter was told that she could not share the memorandum with the 401(k) Committee, the Pension Committee, their legal counsel, or anyone else.  However, the memorandum contained numerous material misstatements and omissions from Ms. Hunter's interview, which material misstatements and omissions formed the basis for the memorandum's erroneous conclusions. Ms. Hunter notified the Audit Committee of such misstatements and omissions and provided the Audit Committee fifteen pages of explanation of the factual inaccuracies as well as a recording of the interview.  In addition, she provided certain  corroborating emails as well as written legal analyses provided by Acme's ERISA counsel and the Retirement Plans' legal counsel to openly and in good faith further support her concerns about Berkshire Hathaway's intentions and actions to reduce benefits in the Retirement Plans.

50.     The Audit Committee subsequently provided Berkshire Hathaway's legal memorandum to the Retirement Plans' Committees and their legal counsel, without correcting any of the errors or omissions noted by Ms. Hunter or referencing her disagreement.

51.     Although Ms. Hunter and the Committees have continued to seek guidance and assistance from the Audit Committee with respect to their pending requests, the Chairman of the Audit Committee advised on June 5, 2014 that "It's in the hands of our lawyers, and no decision has been made."   To date, the Committees have received no further response from Berkshire Hathaway's Audit Committee, and the Audit Committee has wholly failed and refused to respond in any manner to the Committees' members' repeated requests for confirmation that they would not be removed nor face retaliation for the reports they submitted nor for otherwise performing their fiduciary duties.

**G.     The 401(k) Committee's Demand for Full Payment of All Amounts Owed to Participants Under the Plan Is Rejected.**

52.     After many months of discussion of these issues, being advised that the Audit Committee has not reached any decision, being advised the matter was in the hands of Berkshire Hathaway's attorneys, and with pending external audits of the 401(k) Plan and the Pension Plan commencing, on June 12, 2014, the Committees sent a letter to the Board of Directors of Acme in which the 401(k) Committee demanded that Acme immediately retroactively restore to 50% the matching contributions for 2010-2013, and make an additional contribution in the amount of the earnings lost due to the contribution not having been timely made.   That correspondence further advised that if Acme did not make such payments, litigation against Acme and/or Berkshire Hathaway over such sums was likely, either by, or on behalf of, a participant and/or the 401(k) Plan.

53.     In its letter, the 401(k) Committee requested that Acme provide full payment of the amounts due and owing to the participants' accounts in the 401(k) Plan by June 27, 2014 or provide an explanation as to why such payment was not being made.

54.     Berkshire Hathaway responded to the Committees' letter by summoning Dennis Knautz, the President and CEO of Acme, to Omaha, Nebraska for a meeting with Warren Buffett.  The meeting took place on June 25, 2014 among Mr. Knautz, Mr. Buffett, and Marc Hamburg.  During the approximately hour and a half meeting, they discussed the Committees' letter as well as an additional request by the Committees for a mediation among the Committees for both Retirement Plans, Acme, and Berkshire Hathaway.  Mr. Knautz was given specific instructions with respect to delivering Berkshire Hathaway's response to the Committee's letter and its request for mediation.

55.     Mr. Knautz presented Berkshire Hathaway's response during the Committees' June 30, 2014 Joint Meeting.  He reported that Mr. Buffett stated that Berkshire Hathaway was not interested in the Committees' offer of mediation, and then presented the Committees with an ultimatum of accepting one of two written alternatives from Berkshire Hathaway.  The alternatives were 1) agree to a "hard freeze" of the Pension Plan now and concurrently move the 401(k) employer matching percentage to 50%, subject to modification of the amount of the 401(k) employer matching percentage any time after 2014, or 2) agree to a "hard freeze" of the Pension Plan to be effective five (5) years from now, with the 401(k) employer matching percentage to remain at 25%.  Mr. Knautz reported that these alternatives were nonnegotiable, and that if neither of the alternatives were accepted by the Committees, then Berkshire Hathaway intended to divest itself of Acme as a subsidiary.

56.     Berkshire Hathaway's ultimatum intentionally placed the Committees in an impossible situation.  It required the Committees to breach their fiduciary duties with respect to the amendment of the Retirement Plans by Section 5.7 of the Merger Agreement and, by requiring them to choose one alternative, to place the interests of participants in one plan ahead

of those in another plan.  It further, through the threat of divestment, placed the jobs of the Committee and Acme's management at risk if they refused to breach their fiduciary duties.

57.     During Acme's senior management meeting on July 15, 2014, Acme discussed Berkshire Hathaway's ultimatum to the Committees.   Acme's senior management discussed that the Committees did not have the authority or ability to amend the Retirement Plans as contemplated by Berkshire Hathaway's alternatives, as that power resides with Acme.  Acme's senior management was very concerned about the negative consequences of Berkshire Hathaway divesting itself of its interest in Acme. As a result, due to Berkshire Hathaway's ultimatum, Acme's senior management voted that, subject to Berkshire Hathaway agreeing not to divest itself of Acme, Acme was amending the Plan per Berkshire Hathaway's alternative #1 – an immediate "hard freeze" of the Pension Plan and a 50% matching contribution for the 401(k) Plan.  Acme amended the Pension Plan solely due to Berkshire Hathaway's threat of divestment.

58.     This amendment of the Pension Plan was signed on August 11, 2014.    This amendment of the Pension Plan to implement an immediate "hard freeze" was caused by Berkshire Hathaway and directly violates the terms of the Pension Plan, ERISA, and Section 5.7 of the Merger Agreement.

## V.     CLASS ALLEGATIONS

59.     Plaintiffs Hunter, in her individual capacity, Gray, and Allen (as to the 401(k) Plan) bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following two classes of persons similarly situated:

     a.   All participants or beneficiaries of the Acme Brick Company 401(k) Retirement and Savings Plan  (the "401(k) Class").

     b.   All participants or beneficiaries of the Acme Brick Company Pension Plan (the "Pension Plan Class").

**A.      Numerosity.**

60.      The exact number of Class members is unknown to Plaintiffs at this time, but may be readily determined from records maintained by Acme.  Acme or its affiliated companies currently employ approximately 2,242 individuals.  Upon information and belief, approximately 1,558 of these individuals are participants in the Pension Plan, and 1,010 of these individuals are participants in the 401(k) Plan.  Many if not all of those persons are likely members of the 401(k) Class or the Pension Plan Class, or like Plaintiffs Hunter and Gray are members of both Classes, and thus both Classes are so numerous that joinder of all members is impracticable.

**B.      Commonality.**

61.      The issues regarding liability in this case present common questions of law and fact, with answers that are common to all members of the Class, including (1) whether the Retirement Plans  were amended by the Merger Agreement to prohibit the reduction of contributions and "hard freeze" of accrual of benefits that have been imposed by Acme,  (2), whether the actions of Acme and Berkshire Hathaway violate ERISA, and (3) alternatively, whether Berkshire Hathaway has liability for breach of obligations to the members of the Classes as third-party beneficiaries of the Merger Agreement.

62.      The issues regarding the relief are also common to the members of the Classes as the relief will consist of (1) a declaration that the Plans were amended by the Merger Agreement; (2) an order requiring that the Plans, as modified by the Merger Agreement, be amended, administered and funded consistent with ERISA; and (3) alternatively, an order requiring Berkshire Hathaway to pay damages for its breach of the contract with the third-party beneficiaries of the Merger Agreement.

C.     **Typicality.**

63.     The claims of Plaintiffs Gray and Allen are typical of the claims of other members of the Classes because they arise from the same event, practice and/or course of conduct, namely Berkshire Hathaway's causing Acme to reduce benefits in the 401(k) plan and freeze benefit accruals in the Pension Plan, contrary to the terms of the Merger Agreement.  While Plaintiff Hunter is in a management position and is a Plan fiduciary, her claims are in large part typical of the claims of the other members of the Classes because they arise from the same event, practice and/or course of conduct.  All Plaintiffs' claims are also typical because all members in each Class are similarly affected by Defendants' wrongful conduct.

64.      Plaintiffs' claims are also typical of the claims of the other members of the Classes because, to the extent Plaintiffs seek equitable relief, it will affect all Class members equally.  Specifically, the equitable relief sought consists primarily of a declaration that Section 5.7 of the Merger Agreement is an amendment to the Retirement Plans and the Plans must comply therewith.  To the extent Plaintiffs seek monetary relief, it will be calculated using the same formula for all members of the 401(k) Class, and the same formula for all members of the Pension Plan Class.

65.     Defendants do not have any defenses unique to Plaintiffs' claims that would make Plaintiffs' claims atypical of the remainder of the Classes.

D.     **Adequacy.**

66.     Plaintiffs will fairly and adequately represent and protect the interests of all members of the Classes.

67.     Plaintiffs do not have any interests antagonistic to or in conflict with the interests of the Classes.

68.     Defendants have no unique defenses against the Plaintiffs that would interfere with Plaintiffs' representation of the Classes.

69.     Plaintiffs have engaged counsel with extensive experience prosecuting class actions in general and ERISA class actions in particular.

**E.     Rule 23(b)(1) Requirements.**

70.     The requirements of Rule 23(b)(1)(A) are satisfied because prosecution of separate actions by the members of the Classes would create a risk of establishing incompatible standards of conduct for Defendants.

71.     The requirements of Rule 23(b)(1)(B) are satisfied because adjudications of these claims by individual members of the Classes would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede the ability of other members of the Classes to protect their interests.

**F.     Rule 23(b)(2) Requirements.**

72.     Class action status is also warranted under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to both Classes as a whole.

**G.     Rule 23(b)(3) Requirements.**

73.     If the Classes are not certified under Rule 23(b)(1) or (b)(2), then certification under (b)(3) is appropriate because questions of law or fact common to members of each Class predominate over any questions affecting only individual members.  The common issues of law or fact that predominate over any questions affecting only individual members include:  (1) whether the Plans were amended by the Merger Agreement; (2) whether the Plans, as modified by the Merger Agreement, are being amended, administered and funded consistent with ERISA;

and (3) whether Berkshire Hathaway breached its contract with the third-party beneficiaries of the Merger Agreement in causing Acme to improperly fund and amend the Plans.  A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

> A.     Individual Class members do not have an interest in controlling the prosecution of these claims in individual actions rather than a class action because the equitable relief sought by any Class member will either inure to the benefit of the Plan or affect each Class member equally;

> B.     Individual Class members also do not have an interest in controlling the prosecution of these claims because the monetary relief that they could seek in any individual action is identical to the relief that is being sought on their behalf herein;

> C.      There is no other litigation begun by any other Class members concerning the issues raised in this litigation;

> D.     This litigation is properly concentrated in this forum, which is where Defendant Acme is headquartered.

> E.     There are no difficulties managing this case as a class action.

## CAUSES OF ACTION

### COUNT I

**Declaratory Judgment that Section 5.7 of the Merger Agreement
Amends the Retirement Plans**

74.     Plaintiffs reallege and here incorporate by this reference all of the foregoing allegations.

75.     Under 29 U.S.C. § 1132(a)(3), participants and fiduciaries of a Plan are entitled to bring suit to: (A) enjoin any act or practice that violates ERISA; (B) obtain other appropriate relief (i) to redress violations or (ii) enforce the provisions of ERISA or the terms of a Plan.

76.     Pursuant to this statute and Federal Rule of Civil Procedure 57, Plaintiffs seek declaratory relief that the terms of the Retirement Plans were amended at the Effective Time of the Merger Agreement to include restrictions on changes to the Retirement Plans as set forth in Section 5.7 of the Merger Agreement, and for an order reforming the Retirement Plans to include those restrictions.  Plaintiffs further seek declaratory relief that the purported amendment dated August 11, 2014, violates the Retirement Plans, as amended by the Merger Agreement.

77.     An actual and justiciable controversy exists between Plaintiffs and Defendants over whether Section 5.7 of the Merger Agreement constitutes an amendment to the Retirement Plans that is enforceable under ERISA.

78.     Plaintiffs should be granted the following relief:

(A)     A declaration that the 401(k) Plan was amended by the addition of the following restrictions:

> Parent [Berkshire Hathaway] will not cause the Company to reduce any benefits to employees pursuant to the 401(k) Plan for a period of 12 months following the Effective Time, and will not reduce the employer contribution pursuant to the 401(k) Plan.

(B)     A declaration that the Pension Plan was amended by the addition of the following restrictions:

> Parent [Berkshire Hathaway] shall will not cause the Company to reduce any benefits to employees pursuant to the Pension Plan for a period of 12 months following the Effective Time, and will not reduce any benefit accruals to employees pursuant to any such Plans that are defined benefit pension plans;

(C)     A declaration that the Amendment to the Plan dated August 11, 2014, purporting to freeze the accrual of rights under the Pension Plan, violates the terms of the Pension Plan and ERISA; and,

(D)     Such other and further relief to which Plaintiffs may be entitled.

## COUNT II

### Breach of Fiduciary Duty Under ERISA With Respect to the 401(k) Plan
### Against Acme

79.     Plaintiffs reallege and incorporate by reference herein all of the foregoing allegations.

80.     29 U.S.C. §1104 provides that as fiduciary under the terms of the 401(k) Plan, Acme is required to discharge its duties with respect to the 401(k) Plan solely in the interest of participants and beneficiaries.  Acme has a fiduciary duty under 29 U.S.C. § 1104(a)(1)(A) to act for the exclusive purpose of providing benefits to participants and their beneficiaries, and a fiduciary duty under 29 U.S.C. § 1104(a)(1)(D) to act in accordance with all terms and conditions of the 401(k) Plan.  Pursuant to 29 U.S.C. § 1009(a), any violation or breach by Acme of these and any other responsibilities imposed on fiduciaries under ERISA makes Acme liable to the 401(k) Plan for such misconduct, including making good any losses to the 401(k) Plan resulting from each such breach, and for all other appropriate equitable or remedial relief.  .

81.     In violation of the terms of the 401(k) Plan and ERISA, Acme has failed and refused to make all employer contributions to, and to make all benefit payments required under, the 401(k) Plan.  Due to Acme's breaches of its fiduciary duties, the 401(k) Plan has also been further deprived of the returns that would have been received on the full amount of such contributions since the time they should have been made.

82.     As a result of Acme's breaches of its fiduciary duties, Acme is liable to the 401(k) Plan, and Plaintiffs are entitled to judgment from the Court against Acme:

(A)     Ordering Acme to fully comply with the terms of the 401(k) Plan as amended by Section 5.7 of the Merger Agreement;

(B)     Awarding the 401(k) Plan the amount necessary to restore the match to 50% of each current and former employee's contribution up to 5% of the employee's salary for years 2010, 2011, 2012, and 2013, plus the highest returns thereon that the 401(k) Plan would have received from the date any such contributions should have been made;

(C)     Enjoining Acme from failing to make such 50% contributions to the 401(k) Plan in the future; and

(D)     Granting Plaintiffs all such other equitable and remedial relief deemed appropriate by the Court.

## COUNT III

### Breach of Fiduciary Duty Under ERISA With Respect to the Pension Plan
### Against Acme

83.     Plaintiffs reallege and incorporate by reference herein all of the foregoing allegations.

84.     29 U.S.C. §1104 provides that as a fiduciary under the terms of the Pension Plan, Acme is required to discharge its duties with respect to the Pension Plan solely in the interest of participants and beneficiaries.  Acme has a fiduciary duty under 29 U.S.C. § 1104(a)(1)(A) to act for the exclusive purpose of providing benefits to participants and their beneficiaries, and a fiduciary duty under 29 U.S.C. § 1104(a)(1)(D) to act in accordance with all terms and conditions of the Pension Plan.  Pursuant to 29 U.S.C. § 1009(a), any violation or breach by Acme of these and any other responsibilities imposed on fiduciaries under ERISA makes Acme liable to the Pension Plan for such misconduct, including making good any losses to the Pension Plan resulting from each such breach, and for all other appropriate equitable or remedial relief. 29 U.S.C. § 1009(a).

85.     In violation of the terms of the Pension Plan and ERISA, Acme has amended the Pension Plan to institute a "hard freeze."

86.     As a result of Acme's breach of its fiduciary duties, Acme is liable to the Pension Plan, and Plaintiffs are entitled to judgment from the Court against Acme:

(A)     Ordering Acme to fully comply with the terms of the Pension Plan as amended by Section 5.7 of the Merger Agreement;

(B)     Restoring to the Pension Plan the losses resulting from Acme's' actions;

(C)     Enjoining Acme from amending the Pension Plan to reduce or eliminate future benefits and accruals; and

(D)     Granting Plaintiffs all such other equitable and remedial relief deemed appropriate by the Court.

## COUNT IV

### To Enforce, and Obtain Relief for Violations of, the Terms of the Retirement Plans and ERISA, Other Injunctive and Equitable Relief Pursuant to ERISA Against All Defendants

87.     Plaintiffs reallege and incorporate by reference herein all of the foregoing allegations.

88.     Defendant Berkshire Hathaway knowingly participated in Acme's violation of its fiduciary obligations as alleged herein, entitling Plaintiffs to relief against Berkshire Hathaway.

89.     The 401(k) Plan requires that Acme make annual matching employer contributions to the 401(k) Plan in the amount of 50% of each employee's contribution up to 5% of the employee's salary.  For the years 2010, 2011, 2012, and 2013, Acme, at the insistence of Berkshire Hathaway, has failed and refused to do so.  The 401(k) Plan and its participants also have further been deprived of the highest returns that would have been received on the full amount of such contributions since the time they should have been made.

90.     As a result, any Acme employees eligible for a matching contribution that have received to date any distribution from the 401(k) Plan for the years 2010 through 2013 have not received all the benefits they are entitled to and due under the terms of the 401(k) Plan, in violation of the terms of the 401(k) Plan and ERISA.  Similarly, any Acme employees that in the future receive any distribution from the 401(k) Plan for the years 2010 through 2013 will not receive all the benefits to which they are entitled and that are due under the terms of the 401(k) Plan, in violation of the terms of the 401(k) Plan and ERISA.

91.     On August 11, 2014, Acme, at the insistence of Berkshire Hathaway, adopted an amendment to the Pension Plan to institute an immediate "hard freeze" of any further benefit accruals.  Acme's actions, if effective, violate the terms of the Pension Plan as well as the Merger Agreement.

92.     Each and all of the acts and omissions of Acme constitute violations of the Retirement Plans and ERISA, including: the failure and refusal to make all contributions required to the 401(k) Plan; the purported amendment of the Pension Plan to institute a "hard freeze;" the failure and refusal to follow all requirements and obligations of the Retirement Plans; and the failure and refusal to pay all 401(k) benefits due under the terms of 401(k) Plan.  .

93.     Plaintiffs further seek to enforce the 401(k) Plan's terms and require Acme to make employer contributions to the 401(k) Plan in the amount of 50% of each employee's contribution for years 2010, 2011, 2012, and 2013, up to 5% of the employee's salary, together with highest return accorded by the 401(k) Plan's assets since such contributions should have been made.

94.     Plaintiffs further seek issuance from the Court of an injunction prohibiting Defendants from their continued, and any future, breach of the terms of the Retirement Plans, including failure to make employer contributions in at least the amount of 50% of any employee's contributions up to 5% of the employee's salary, and any additional attempts by Berkshire Hathaway to cause Acme to institute a "hard freeze" of the Pension Plan.

95.     Due to Defendants' misconduct and threats, Plaintiffs and the Retirement Plans are further entitled to an injunction against Defendants barring the removal of, or other retaliation against, any fiduciaries of the Retirement Plans, expressly including the members of the Committees, on account of any action taken in any manner in connection with their

performance of their fiduciary duties and protection of the rights of participants, including all actions described herein.

96.     Plaintiffs further request that the Court accord Plaintiffs all other appropriate equitable relief to enforce and remedy Acme's violation of the provisions of the Retirement Plans and ERISA, and Berkshire Hathaway's knowing participation therein.

## COUNT V

### Declaratory Judgment and Injunctive Relief under 29 U.S.C. §1132(a)(3)
### Against All Defendants

97.     Plaintiffs reallege and incorporate by reference herein all of the foregoing allegations.

98.     Defendant Berkshire Hathaway knowingly participated in Acme's violation of its fiduciary obligations as alleged herein, entitling Plaintiffs to relief against Berkshire Hathaway.

99.     Plaintiffs seek a declaratory judgment decreeing the rights, duties and obligations of the parties under the 401(k) Plan and the Pension Plan.  An actual and justiciable controversy exists between Plaintiffs and the Defendants as to these disputes and Defendants' liability therein, including: as to the terms of Section 5.7 of the Merger Agreement, and whether Berkshire Hathaway's actions caused the reduction in Acme's matching contribution to the 401(k) Plan from 50% to 25% for 2012 and 2013, whether Berkshire Hathaway caused Acme not to retroactively increase the match to 50% for 2010 and 2011, and whether Berkshire Hathaway's actions caused Acme to reduce benefit accruals to employees pursuant to the Pension Plan.  Entry of a declaratory judgment is necessary, appropriate, and effective to resolve these controversies.

100.     Plaintiffs further request that the Court declare that the Pension Plan, as amended by Section 5.7 of the Merger Agreement, forbids a "hard freeze" of the Pension Plan, and that it further declare that Acme's amendment of the Pension Plan on the instruction of Berkshire Hathaway to institute a 'hard freeze" was improper as a matter of law.  Plaintiffs further request that the Court declare that Berkshire Hathaway improperly caused the amendment by Acme of

the Pension Plan to institute the "hard freeze" in violation of Section 5.7 of the Merger Agreement, the terms of the Pension Plan, and ERISA.  Plaintiffs further seek an order enjoining Berkshire Hathaway from causing Acme to reduce any benefits or benefit accruals to employees pursuant to the Pension Plan.

101.     Plaintiffs request that the Court declare the 401(k) Plan, as amended by the phrase in Section 5.7 of the Merger Agreement  "the employer contribution pursuant to any such Plans that are defined contribution pension plans" means Acme's contribution to the 401(k) Plan in the amount of 50% of each employee's contribution up to 5% of the employee's salary.  Plaintiffs further request that the Court declare that under the facts and circumstances, Acme improperly reduced Acme's 401(k) Plan match from 50% to 25% in 2012 and 2013, and is required by the terms of the 401(k) Plan to retroactively restore the 401(k) match to 50% for 2010 and 2011.  Plaintiffs further request that the Court declare that Berkshire Hathaway caused and knowingly participated in Acme's improper reduction in Acme's matching contribution to the 401(k) Plan from 50% to 25%, and Berkshire Hathaway also caused and knowingly participated in Acme's intentional failure to retroactively increase the match to 50% for 2010 and 2011, all in violation of Section 5.7 of the Merger Agreement, the terms of the 401(k) Plan, and ERISA.  Plaintiffs further seek an order enjoining Berkshire Hathaway from causing Acme to reduce any employer contribution to the 401(k) Plan.

## COUNT VI

### Alternative Claim for Breach of Contract
### Against Berkshire Hathaway

102.     Plaintiffs reallege and incorporate by reference herein all of the foregoing allegations.

103.     In Section 5.7 of the Merger Agreement between Berkshire Hathaway and Justin Industries, Berkshire Hathaway expressly agreed not to cause Acme to "reduce the employer contribution pursuant to any such [Retirement] Plans that are defined contribution pension

plans," and not to cause Acme to "reduce benefit accruals to employees pursuant to any such [Retirement] Plans that are defined benefit pension plans."

104.    A benefit to the Retirement Plans and their participants was expressly within the contemplation of the parties to the Merger Agreement when it was executed.

105.    The parties to the Merger Agreement contemplated that the Retirement Plans and their participants would be vested with the right to sue for enforcement of Section 5.7 of the Merger Agreement.

106.    The Retirement Plans and their participants, including Plaintiffs, are intended third-party beneficiaries of Section 5.7 of the Merger Agreement.

107.    At and after the Effective Time of the Merger Agreement in 2000, Berkshire Hathaway has wholly owned and controlled Justin Industries and its successor fiduciary under the Retirement Plans, Acme.

108.    In breach of its contractual obligations to the Retirement Plans and their participants, including Plaintiffs, under Section 5.7 of the Merger Agreement, Berkshire Hathaway, through the exercise of its ownership and control over Acme, caused Acme to breach its fiduciary duty by preventing Acme from retroactively restoring the annual 401(k) match to a full 50% for 2010 and 2011.

109.    Berkshire Hathaway's breach of Section 5.7 of the Merger Agreement resulted and continues to result in the loss of matching funds, as well as the ongoing loss of returns on required but unfunded 401(k) contributions from the date they should have been made.

110.    In further breach of its contractual obligations to the Retirement Plans and their participants, including Plaintiffs, under Section 5.7 of the Merger Agreement, Berkshire Hathaway, through the exercise of its ownership and control over Acme, caused Acme, in breach of Acme's fiduciary duties, to adopt an amendment to the Pension Plan instituting a "hard freeze" of accrual of pension benefits under the Pension Plan.

111.    On account of its breaches of Section 5.7 of the Merger Agreement, Berkshire Hathaway is liable for damages in an amount to be proved at trial.

## COUNT VII

### Berkshire Hathaway's Knowing Participation
### In Acme's Breach of Fiduciary Duty

112.    Plaintiffs reallege and incorporate by reference herein all of the foregoing allegations.

113.    This Count alleges knowing participation in a fiduciary breach against Berkshire Hathaway.

114.    To the extent that Berkshire Hathaway is found not to have been a fiduciary or to have acted in a fiduciary capacity with respect to the conduct alleged to have violated ERISA, Berkshire Hathaway knowingly participated in the fiduciary breaches of Acme and as such is liable for equitable relief as a result of participating in such breaches.

115.    Berkshire Hathaway benefited from the breaches by reducing the obligations of its wholly-owned subsidiary, Acme, and thus increasing Acme's profitability for the benefit of Acme's sole shareholder, Berkshire Hathaway.  Accordingly, Berkshire Hathaway may be required to disgorge the benefit that would have been contributed to the Retirement Plans, but for Berkshire Hathaway's participation in the foregoing breaches of fiduciary duty.

## COUNT VIII

### Attorneys' Fees, Expenses and Costs
### Against All Defendants

116.    Plaintiffs reallege and incorporate by reference herein all of the foregoing allegations.

117.    Pursuant the common fund doctrine, ERISA section 502(g), 29 U.S.C. §1132(g), and/or other applicable law, Plaintiffs are entitled to their reasonable attorneys' fees and expenses from Defendants.

118.    Pursuant to the common fund doctrine, ERISA section 502(g), 29 U.S.C. §1132(g), 28 U.S.C. §1920, and/or other applicable law, Plaintiffs are entitled to recover taxable costs from Defendants.

119.   Pursuant to Texas law, Plaintiffs are also entitled to recover their reasonable attorneys' fees and costs from Defendant Berkshire Hathaway with respect to its breaches of the Merger Agreement.

120.   Plaintiffs have been required to retain the undersigned counsel to represent them in this lawsuit and will incur reasonable and necessary attorneys' fees, expenses, and taxable costs in this lawsuit.  Thus, Plaintiffs seek recovery from Defendants of all reasonable attorneys' fees, expenses, and taxable costs incurred by Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

(A)   Enter judgment against Defendants on Count I of the Complaint:

(1)   Declaring that the 401(k) Plan was amended by Section 5.7 of the Merger Agreement by the addition of the following restrictions:

> Parent [Berkshire Hathaway] will not cause the Company to reduce any benefits to employees pursuant to the 401(k) Plan for a period of 12 months following the Effective Time, and will not reduce the employer contribution pursuant to the 401(k) Plan.

(2)   Declaring that the Pension Plan was amended by Section 5.7 of the Merger Agreement by the addition of the following restrictions:

> Parent [Berkshire Hathaway] will not cause the Company to reduce any benefits to employees pursuant to the Pension Plan for a period of 12 months following the Effective Time, and will not reduce any benefit accruals to employees pursuant to any such Plans that are defined benefit pension plans;

(3)   Declaring that the Amendment to the Plan dated August 11, 2014, purporting to freeze the accrual of rights under the Pension Plan, violates the terms of the Pension Plan and ERISA;

(B)   Enter judgment against Acme on Count II of the Complaint:

**ORIGINAL COMPLAINT**

  (1)  Ordering Acme to fully comply with the terms of the 401(k) Plan as amended by Section 5.7 of the Merger Agreement;

  (2)  Awarding the 401(k) Plan the amount necessary to restore the match to 50% of each current and former employee's contribution up to 5% of the employee's salary for years 2010, 2011, 2012, and 2013, plus the highest returns thereon that the 401(k) Plan would have received from the date any such contributions should have been made;

  (3)  Enjoining Acme from failing to make such 50% contributions to the 401(k)Plan in the future;

(C)  Enter judgment against Acme on Count III of the Complaint:

  (1)  Ordering Acme to fully comply with the terms of the Pension Plan as amended by Section 5.7 of the Merger Agreement;

  (2)  Restoring to the Pension Plan the losses resulting from Acme's actions;

  (3)  Enjoining Acme from amending the Pension Plan to reduce or eliminate future benefits and accruals;

(D)  Enter judgment against Defendants on Count IV of the Complaint:

  (1)  Determining that each and all of the acts and omissions of Acme alleged herein constitute violations of the Retirement Plans and ERISA, including: the failure and refusal to make all contributions required to the 401(k) Plan; the purported amendment of the Pension Plan to institute a "hard freeze;" the failure and refusal to follow all requirements and obligations of the Retirement Plans; and the failure and refusal to pay all 401(k) benefits due under the terms of 401(k) Plan;

  (2)  Requiring Acme to make employer contributions to the 401(k) Plan in the amount of 50% of each employee's contribution for years 2010, 2011, 2012, and

2013, up to 5% of the employee's salary, together with highest return accorded by the 401(k) Plan's assets since such contributions should have been made;

(3)     Enjoining Defendants from their continued, and any future, breach of the terms of the Retirement Plans, including failure to make employer contributions in at least the amount of 50% of any employee's contributions up to 5% of the employee's salary, and any additional attempts by Berkshire Hathaway to cause Acme to institute a "hard freeze" of the Pension Plan;

(4)     Enjoining Defendants from removing, or otherwise retaliating against, any fiduciaries of the Retirement Plans, expressly including the members of the Committees, on account of any action taken in any manner in connection with their performance of their fiduciary duties and protection of the rights of participants, including all actions described herein;

(E)     Enter judgment against Defendants on Count V of the Complaint:

(1)     Declaring that the Pension Plan, as amended by Section 5.7 of the Merger Agreement, forbids a "hard freeze" of the Pension Plan;

(2)     Determining that Acme's amendment of the Pension Plan to institute a 'hard freeze" was improper as a matter of law;

(3)     Determining that Berkshire Hathaway knowingly participated in and improperly caused the amendment by Acme of the Pension Plan to institute the "hard freeze" in violation of Section 5.7 of the Merger Agreement, the terms of the Pension Plan, and ERISA;

(4)     Enjoining Acme from reducing any benefits or benefit accruals to employees pursuant to the Pension Plan;

(5)     Declaring that the 401(k) Plan, as amended by the phrase in Section 5.7 of the Merger Agreement  "the employer contribution pursuant to any such Plans that are defined contribution pension plans" means Acme's contribution to the

401(k) Plan in the amount of 50% of each employee's contribution up to 5% of the employee's salary;

(6)      Determining that Acme reduced Acme's 401(k) Plan match from 50% to 25% in 2012 and 2013,  and is required by the terms of the 401(k) Plan to retroactively restore the 401(k) match to 50% for 2010 and 2011;

(7)      Determining that Berkshire Hathaway knowingly participated in Acme's improper reduction in Acme's matching contribution to the 401(k) Plan from 50% to 25%, and Berkshire Hathaway also participated in Acme's intentional failure to retroactively increase the match to 50% for 2010 and 2011, all in violation of Section 5.7 of the Merger Agreement, the terms of the 401(k) Plan, and ERISA;

(8)      Enjoining Berkshire Hathaway from causing Acme to reduce any employer contribution to the 401(k) Plan;

(F)      In the alternative, enter judgment against Berkshire Hathaway on Count VI of the Complaint for breach of its contractual obligations to third party beneficiaries under Section 5.7 of the Merger Agreement, in an amount to be proved at trial;

(G)      Enter judgment on Count VII of the Complaint requiring Berkshire Hathaway to disgorge the benefit that would have been contributed to the Retirement Plans, but for Berkshire Hathaway's participation in the foregoing breaches of fiduciary duty;

(H)      Enter judgment against Defendants on Count VIII of the Complaint awarding Plaintiffs their reasonable attorneys' fees, expenses, and taxable costs incurred on account of this lawsuit; and

(I)      Grant Plaintiffs such other and further relief, in equity or at law, as the Court may deem appropriate.

DATED August 15, 2014.

Respectfully submitted,

Mark C. Hill, SBN 09647400
John J. Shaw, SBN 24079312
MYERS ★ HILL
2525 Ridgmar Blvd., Ste. 150
Fort Worth, TX 76116
Tel: (817) 731-2500
Fax: (817) 731-2501
mhill@myers-hill.com
jshaw@myers-hill.com


Gary A. Gotto, Arizona Bar No. 007401
(*pro hac vice pending*)
Christopher Graver, Arizona Bar No. 013235
(*pro hac vice pending*)
KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, Arizona  85012
Tel:  (602) 248-0088
Fax:  (602) 248-2822
ggotto@kellerrohrback.com
cgraver@kellerrohrback.com


ATTORNEYS FOR PLAINTIFFS

**ORIGINAL COMPLAINT**                                                **Page 36**

Tab 6

Recycled Paper

(800) 683-8877

# AGREEMENT AND PLAN OF MERGER

by and among

BERKSHIRE HATHAWAY INC.

J ACQUISITION CORP.

and

JUSTIN INDUSTRIES, INC.

June 19, 2000

[650764.1]

15-10854.150

Section 5.6    Further Assurances.

(a)    Subject to the terms and conditions of this Agreement, each of Parent and the Company shall, and shall cause its subsidiaries to, use all reasonable efforts (i) to take, or cause to be taken, all actions necessary, proper or advisable to comply promptly with all legal requirements which may be imposed on such party or its subsidiaries with respect to the Merger and, subject to the conditions set forth in Article VI hereof, to consummate the transactions contemplated by this Agreement, including, without limitation, the Offer and the Merger, as promptly as practicable and (ii) to obtain (and to cooperate with the other party to obtain) any consent, authorization, order or approval of, or any exemption by, any Governmental Entity and any other third party which is required to be obtained by the Company or Parent or any of their respective subsidiaries in connection with the Merger and the other transactions contemplated by this Agreement, and to comply with the terms and conditions of any such consent, authorization, order or approval.

(b)    Subject to the terms and conditions of this Agreement, each of Parent and the Company shall use all reasonable efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all things necessary, proper or advisable to consummate and make effective, as soon as practicable after the date of this Agreement, the transactions contemplated hereby, including, without limitation, using all reasonable efforts to lift or rescind any injunction or restraining order or other order adversely affecting the ability of the parties to consummate the transactions contemplated hereby and using all reasonable efforts to defend any litigation seeking to enjoin, prevent or delay the consummation of the transactions contemplated hereby or seeking material damages.

Section 5.7    Employee Matters.

(a)    For purposes of all employee benefit plans (as defined in Section 3(3) of ERISA) and other employment agreements, arrangements and policies of Parent under which an employee's benefit depends, in whole or in part, on length of service, credit will be given to current employees of the Company for service with the Company prior to the Effective Time, provided that such crediting of service does not result in duplication of benefits.  Parent shall, and shall cause the Company to, honor in accordance with their terms all employee benefit plans (as defined in Section 3(3) of ERISA) and other employment, consulting, benefit, compensation or severance agreements, arrangements and policies of the Company (collectively, the "Company Plans"); provided, however, that Parent or the Company may amend, modify or terminate any individual Company Plans in accordance with the terms of such Plans and applicable law (including obtaining the consent of the other parties to and beneficiaries of such Company Plans to the extent required thereunder); provided, further, that notwithstanding the foregoing provisio, Parent will not cause the Company to (i) reduce any benefits to employees pursuant to such Plans for a period of 12 months following the Effective Time, (ii) reduce any benefit accruals to employees pursuant to any such Plans that are defined benefit pension plans, or (iii) reduce the employer contribution pursuant to any such Plans that are defined contribution pension plans.  The Company shall amend its Supplemental Executive Retirement Plans to provide that, effective as of the Closing, participants who have been (or would have been) employed by the Company for 10 years or more as of the later of the Closing Date or December

[650764.1]

27

31, 2000, shall be entitled to benefits under such plan upon termination of employment, if terminated within 12 months after the Effective Time, as if such participant was 55 years old at the date of such termination, subject to the other provisions of such plan.

(b)    Any employee of the Company employed at the time of the Closing at the Company's corporate offices in Fort Worth, Texas ("Corporate Employee") that is terminated by the Company without cause during the 12 months following the Closing Date, shall be paid by the Company, in cash (i) with respect to Company Employees who are officers of the Company at the time of Closing ("Corporate Officers"), 12 months' base pay and (ii) with respect to Company Employees who are not Corporate Officers, the greater of (x) two months' base pay or (y) one-half of one week's pay for each year of service. In addition, each Corporate Officer that is an employee of the Company at the time annual bonuses are paid by the Company in the ordinary course of business (or any such Officer that is terminated without cause by the Company) shall receive a cash bonus for fiscal year 2000 that is equal to or greater than the cash bonus paid to such Corporate Officer for fiscal year 1999.

Section 5.8    Indemnification. From and after the Effective Time, Parent shall, and shall cause the Surviving Corporation to, indemnify, defend and hold harmless each person who is now, or has been at any time prior to the date of this Agreement or who becomes such prior to the Effective Time, an officer, director, agent, fiduciary or employee of the Company or any of its subsidiaries (the "Indemnified Parties") against (i) any and all losses, claims, damages, costs, expenses, fines, liabilities or judgments or amounts that are paid in settlement with the approval of the indemnifying party (which approval shall not be unreasonably withheld) of or in connection with any claim, action, suit, proceeding or investigation based in whole or in part on or arising in whole or in part out of the fact that such person is or was a director, officer, agent, fiduciary or employee of the Company or any of its subsidiaries whether pertaining to any action or omission existing or occurring at or prior to the Effective Time and whether asserted or claimed prior to, or at or after, the Effective Time ("Indemnified Liabilities"), and (ii) all Indemnified Liabilities based in whole or in part on, or arising in whole or in part out of, or pertaining to this Agreement or the transactions contemplated hereby; provided, however, that, in the case of the Purchaser and the Surviving Corporation such indemnification shall only be to the fullest extent a corporation is permitted under the DGCL or the Texas Act, as applicable, to indemnify its own directors, officers, agents, fiduciaries and employees, and in the case of Parent. such indemnification shall not be limited by the DGCL but such indemnification shall not be applicable to any claims made against the Indemnified Parties if a judgment or other final adjudication established that (A) their acts or omissions were committed in bad faith or were the result of active and deliberate dishonesty and were material to the cause of action so deliberated or (B) arising out of, based upon or attributable to the gaining in fact of any financial profit or other advantage to which they were not legally entitled. Parent, Purchaser and the Surviving Corporation, as the case may be, will pay all expenses of each Indemnified Party in advance of the final disposition of any such action or proceeding to the fullest extent permitted by law upon receipt of any undertaking contemplated by Section 145(e) of the DGCL or Article 2.02-1 of the Texas Act, as applicable. Without limiting the foregoing, in the event any such claim, action, suit, proceeding or investigation is brought against any Indemnified Party (whether arising before or after the Effective Time), (i) the Indemnified Parties may retain counsel satisfactory to them and Parent and Purchaser, (ii) Parent shall, and shall cause the Surviving Corporation to,

[650764.1]

28

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2015, I electronically filed the foregoing Appellants' Record Excerpts with the U.S. Court of Appeals for the Fifth Circuit by using the Court's CM/ECF system. I certify that all appellate counsel of record to the parties to this appeal are registered with the Court's CM/ECF system.  Pursuant to FRAP 25(d)(1)(B), the names of counsel, mailing address and electronic addresses are listed below:

    Anthony F. Shelley
    Miller & Chevalier Chartered
    655 15th Street NW, Suite 900
    Washington, DC 20005-0000
    Email: ashelley@milchev.com

    Ralph H. Duggins, III, Esq.
    Cantey Hanger, L.L.P.
    600 W 6th Street, Suite 300
    Cantey Hanger Plaza
    Fort Worth, TX 76102-3585
    Email: rduggins@canteyhanger.com

                            KELLER ROHRBACK L.L.P.

                            *By: s/T. David Copley*
                            T. David Copley